ROBERT BUEGE, Plaintiff-Appellant, *v*. NORMAN E. LEE, Indiv. and as Chief of Police of the City of Zion, Defendant-Appellee.

Second District    No. 77-154

Opinion filed January 19, 1978.

Peter J. Collins, of Waukegan, for appellant.

Edward Dolinar, of Zion, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

■■ Plaintiff, a police officer, was ordered by the defendant police chief of the City of Zion to submit to a polygraph examination. Prior to the date set the plaintiff filed a complaint in the circuit court of Lake County seeking to restrain the examination pending a showing of just cause. The trial court dismissed the complaint for failure to state a justiciable cause of action. On plaintiff's appeal we observe that the complaint essentially seeks a declaration of rights and accordingly review this matter pursuant to the declaratory judgment act. Ill. Rev. Stat. 1975, ch. 110, par. 57.1; *Krebs v. Mini*, 53 Ill. App. 3d 787, 791 (1977).

We are asked to decide whether when a police officer has been ordered by his superior to submit to a polygraph examination, he may invoke the jurisdiction of the court prior to his refusal to answer. While we recognize that courts should generally refrain from interfering with the internal operations of a police department, we note the extraordinary circumstances of this case and conclude the pleadings are sufficient to require an evidentiary hearing.

In substance the complaint alleges the order requiring the plaintiff to take a polygraph examination was arbitrary, capricious and unreasonable; and further that it was a part of an attempt to politically harass the plaintiff set in motion at the direction of the mayor of the City of Zion. It is alleged that on December 7, 1976, at 2 a.m. Buege was involved in arresting a Lake County public official, Alice B. Shorts, for the offense of driving while intoxicated. Also, in an unrelated incident the plaintiff had issued a warning ticket to a city vehicle for failure to display a safety inspection sticker. Following these incidents, on or about January 31, 1977, the mayor told the plaintiff that the city would find charges on which to fire him. Commencing on February 5, 1977, Buege was assigned as a foot patrolman on the 9 p.m. to 5 a.m. shift. He was the only officer assigned to such duty and on the days he was not working no other officers were so assigned. These matters came to the attention of the local newspapers and radio stations. One newspaper account suggested that the mayor had punished plaintiff by assigning him to foot patrol because of the incident involving the arrest of a public official and because of the ticket issued to the city vehicle.

The publicity prompted the mayor to deliver a speech to the city council on February 15, 1977, in defense of the action concerning the plaintiff. In the speech the mayor stated, "I find it difficult to understand why this man was employed in the first place." In the speech the mayor indicated that plaintiff was a "safety hazard," that he exhibited "anti-social behavior," that he had received reports from a police department where plaintiff had previously been employed that he was "psychologically

unstable" and that "on two occasions he went berserk with prisoners." At the end of the speech the mayor stated:

> "The synopsis of this statement leads me to suggest that the Chief of Police consider consulting with the Police and Fire Commission, suggesting that Officer Buege be suspended while waiting for the outcome of the litigation in process, that he further explore the areas of this report that could be considered relevant, and further that a poly-psycho examination be administered to this Officer."

Four days later on February 19, 1977, plaintiff was suspended. The chief of police filed charges against him alleging that plaintiff had willfully mistreated Mrs. Shorts while she was in police custody on December 7, 1976, by slamming a car door on her legs. The matter was set for a hearing before the Board of Police and Fire Commissioners on March 9, 1977. On that date plaintiff appeared with his attorney but on the motion of the city attorney the charges were dropped and the plaintiff was returned to duty.[1]

On March 16, 1977, the plaintiff received a letter from the chief of police commanding him to submit to a polygraph test and stating that the test would pertain to three separate incidents involving named local citizens, one of whom was Alice B. Shorts. In addition, the letter indicated that the test would relate to plaintiff's previous employment and employment applications.

In response to a request by plaintiff's counsel the chief of police gave more specific information as to the examination in a letter dated March 28, 1977. He first stated, "There have been no charges filed and I do not personally contemplate charges against Officer Buege." The chief then stated that he wished to inquire into an incident in which a Nancy Maxine Robinson had alleged that plaintiff choked her and hit her while arresting her on a Lake County contempt of court warrant; that he wished to pursue the incident involving Alice B. Shorts; and an incident involving a confrontation with the mother of a 7-year-old boy who was apprehended for burglary and who plaintiff had suggested should be sent to the Youth Home. Other matters set forth in the letter were concerned with plaintiff's "general attitude with prisoners and self control," whether plaintiff had applied to the Rockford police department and if so why he was not hired; whether plaintiff's previous employment with the Island Lake police department had terminated with plaintiff's resignation, a request for his resignation or the representation that he would not be certified. The chief also indicated that he wished to inquire into plaintiff's

---

[1] Defendant's counsel in this court has advised us in oral argument that the charges were dropped as a result of an investigation in which the other officers present at the incident had absolved the plaintiff of any wrong doing.

application to the Zion police department in which plaintiff had indicated that he had never been treated for a nervous or psychiatric condition, noting that he had received a report that plaintiff had received such treatment.

In plaintiff's complaint he alleged that his rights would be irreparably injured unless the order for the examination was based upon probable cause and on matters that were relevant and material to the plaintiff's job as a police officer. On the refusal of the trial court to entertain jurisdiction of the case this court on motion issued an order staying the proceedings pending review.

The defendant argues that the trial court properly dismissed the complaint for the reason that the circuit court had no subject matter jurisdiction over an interdepartmental order from a police chief to a subordinate member of his department; that in any event there is no justiciable controversy until the plaintiff refuses to answer questions and is charged with a violation; and finally that equitable relief is precluded by the presence of an adequate remedy at law by a hearing before the Board of Police and Fire Commissioners under the controlling act (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17) which in turn is judicially reviewable under the Administrative Review Act.

■■ We cannot agree that the circuit court is precluded from reviewing all orders of a police chief no matter what the circumstances. It is. axiomatic, of course, that the chief of police has the duty to protect the public from the evil effects of crime and corruption. Inherent in that duty is the responsibility to maintain an efficient, effective and honest police force which deals fairly with citizens. A police chief is certainly justified in maintaining necessary discipline in his department, in seeking to purge the force of members who may have engaged in criminal or disreputable acts or to otherwise determine whether his subordinates are able to perform their required duties. Clearly, the actions of a police chief in implementing these responsibilities should not, except in the most extraordinary circumstances, be subject to a continuing review or supervision by the courts. This has been uniformly recognized by the authorities in Illinois and elsewhere. See, *e.g., Charles v. Wilson*, 52 Ill. App. 2d 14, 25-26 (1964); *Coursey v. Board Fire & Police Commissioners*, 90 Ill. App. 2d 31, 43 (1967); *Conte v. Horcher*, 50 Ill. App. 3d 151, 154 (1977). See also *Seattle Police Officers' Guild v. City of Seattle*, 80 Wash. 2d 307, 494 P.2d 485, 490 (1972.)

The import of these and similar cases, however, is not to insulate from judicial review all interdepartmental orders of a police chief to his subordinates. It is rather to assure that in a proper case the order may be examined to determine whether it is issued in good faith and involves a

reasonable exercise of discretion. See *Charles v. Wilson*, 52 Ill. App. 2d 14, 26 (1964).

Thus in *Coursey* (90 Ill. App. 2d 31, 43), the court held that a police chief has inherent power to order an officer to submit to a polygraph examination where it appears from the record that the results may be of help in narrowing the field of persons suspected of an offense or may assist in the determination of whether to commence disciplinary action when there is an accusation against a police officer which he insists is untrue. However, the court did not deny that there was jurisdiction to inquire as to the proper exercise of that power, stating that the chief "did not exceed his authority in ordering Coursey to take the examination and his authority was not arbitrarily exercised." More recently in *Conte v. Horcher*, 50 Ill. App. 3d 151 (1977), the appellate court refused to allow declaratory relief which would have prevented the police chief from requiring that one of his officers submit to a psychiatric examination. However, the court concluded that under the circumstances presented in the complaint the chief's order "was not only valid and proper, but also necessary to assure the effective performance of the department." (50 Ill. App. 3d 151, 154.) In *Conte* the court also relied upon *Coursey* which had expressly recognized that, "There may be circumstances wherein a superior officer's order that a subordinate submit to a polygraph test would be arbitrary, * * *." 90 Ill. App. 2d 31, 42.

■■ We also cannot agree with defendant's contention that there is no justiciable controversy until the plaintiff has refused to answer questions and is charged with the violation. The allegations of well pleaded fact in the complaint together with the reasonable inferences to be drawn from them must be assumed as true when tested by the defendant's motion to dismiss. (*Courtney v. Board of Education*, 6 Ill. App. 3d 424, 425 (1972).) The complaint states facts which demonstrate an actual controversy particularly in view of the fact that the mayor of the city of Zion allegedly stated that he intended to "find charges" upon which to fire the plaintiff. (See *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 546 (1977).) The doubt thereby cast on the propriety of the order and the threat to plaintiff's employment status establishes a condition of justiciability under the circumstances. See also *Antioch Community High Teachers Association v. Board of Education*, 2 Ill. App. 3d 504, 506 (1971); and *Roberts v. Roberts*, 90 Ill. App. 2d 184, 187 (1967).

Defendant's reliance upon *United Parcel Workers v. Mitchell*, 330 U.S. 75, 91 L. Ed. 754, 67 S. Ct. 556 (1947), as support for his second argument that the controversy in this case is not ripe for adjudication is misplaced. In *Mitchell*, Federal employees challenged the Hatch Political Activity Act which proscribed partisan political action by government workers.

With respect to all but one of the plaintiffs the Supreme Court determined there was no case or controversy within the Federal Declaratory Judgment Act. As noted in *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 37 L. Ed. 2d 796, 93 S. Ct. 2880, 2885 (1973), the *Mitchell* court came to that conclusion because the Court could only speculate as to the type of political activity the employees sought to engage in and as to what they might say and under what circumstances they might publish their statements. In *Letter Carriers*, the plaintiff specifically alleged the type of the partisan political activity they desired to engage in and the Supreme Court ruled on the constitutionality of the Hatch Act under those circumstances.

Defendant's final contention is that relief in this case is precluded by the presence of an adequate remedy at law by way of an administrative hearing before the Board of Police and Fire Commissioners of the City of Zion. We first observe that a different case would be before the court if charges against plaintiff were pending in a disciplinary proceeding. (See, *e.g., Eckells v. City Council*, 23 Ill. App. 2d 360, 363 (1960).) The fact is, however, that no proceedings are pending before the Board and so defendant's contention essentially seeks to force plaintiff to disobey the chief's order and then challenge its validity in a subsequent disciplinary proceeding before the Board. Defendant notes that plaintiff is entitled to seek judicial review from disciplinary sanctions imposed by the Board. See Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17; ch. 110, par. 264.

■■ We recognize the principle of exhaustion of remedies which holds that "a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him." (*Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 358 (1975).) But we do not think that plaintiff should be required to provoke a disciplinary proceeding against himself so as to provide a forum to challenge the chief's order. It is central to the purpose of the declaratory judgment procedure that it allow

> " * * * the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can learn the consequences of their action before acting." (Ill. Ann. Stat., ch. 110, par. 57.1, Historical and Practice Notes, at 132 (Smith-Hurd (1968).)

Under the circumstances presented by this case we see no reason that plaintiff should first disobey the chief and then "wait for the final blow to fall" just because the dispute could conceivably be resolved in that manner. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 18 L. Ed. 2d 681, 87 S. Ct. 1507, 1518 (1967); *Walton Playboy Clubs, Inc. v. City of Chicago*, 37 Ill. App. 2d 425, 429 (1962).

The trial court, because of its evident conclusion that it did not have jurisdiction to review an order of a police chief to his subordinate did not inquire into the reasonableness of the order. On remand the court must consider whether the defendant's order to his subordinate to take the polygraph test was properly related to Buege's duties as a police officer or whether it was essentially arbitrary and capricious under all of the circumstances. In resolving this question the judge is directed to particularly consider whether the questions which the chief has said will be posed are related "specifically, directly and narrowly" to the performance of the officer's official duties. This is the standard made applicable to the review of the discharge of a public employee who refuses to answer questions on the basis of his fifth amendment rights against self-incrimination in *Gardner v. Broderick*, 392 U.S. 273, 20 L. Ed. 2d 1082, 88 S. Ct. 1913, 1916 (1968), and in *Uniformed Sanitary Men Association v. Commissioner of Sanitation*, 392 U.S. 280, 88 S. Ct. 1917, 1920 (1968). (See also *Confederation of Police v. Conlisk*, 489 F.2d 891, 894-95 (7th Cir. 1973); *McLean v. Rochford*, 404 F. Supp. 191, 198 (N.D. Ill. 1975); *Seattle Police Officers' Guild v. City of Seattle*, 80 Wash. 2d 307, 494 P.2d 485, 491 (1972); *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 1283, 1285 (1977).) While the privilege against self-incrimination is not involved in this case the protection given to plaintiff to be secure against unreasonable invasion of privacy under the Illinois Constitution (Ill. Const. 1970, art. I, §§6, 12) dictates a similar standard.

It should be noted that in *Conte v. Horcher*, 50 Ill. App. 3d 151 (1970), the police officer was ordered to submit to a psychiatric examination which was related to a specific incident which had occurred a few weeks prior to the order and the incident was particularly related to the subordinate's duties as a police officer. However, in the present case serious questions arise as to whether the scope of the chief's proposed inquiries specifically, directly and narrowly related to plaintiff's duties as a police officer for the City of Zion. For example, the chief desires to inquire about plaintiff's application for employment to police departments of other municipalities and as to his performance while employed by other municipalities. The relevancy of plaintiff's employment applications and the work record in other police departments with relation to his present duties as a police officer is not readily apparent. In the case of the alleged confrontation with the mother of a 7-year-old boy, it appears from the record that the incident occurred when plaintiff was employed by the Island Lake Police Department some years previous to his employment in Zion. On remand it would appear that it is encumbent upon the police chief to demonstrate that the rigorous search into plaintiff's past history is specifically, directly and narrowly related to his present duties as a police officer.

We therefore reverse the judgment of the trial court which dismissed the complaint and remand the cause with directions that the trial court consider the case on its merits in a manner consistent with the views which we have expressed. Pending that determination the defendant's order will remain in abeyance.

Reversed and remanded with directions.

NASH and WOODWARD, JJ., concur.