WILLIAM PHILLIPS, Petitioner-Appellee, *v.* CHESTER A. HALL, Respondent-Appellant.

Second District   No. 82—277

Opinion filed March 1, 1983.—Rehearing denied April 21, 1983.

Barry L. Moss and George A. Marchetti, both of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Thomas F. McGuire, of Long Grove, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

On February 26, 1982, petitioner, William Phillips, filed his complaint for declaratory judgment and injunction against respondent, Chester A. Hall. The complaint sought to have a certain order of February 16, 1982, issued by defendant Hall as chief of police of Warren-

ville, Du Page County, Illinois, declared arbitrary, capricious and contrary to the law and an abuse of discretion which improperly infringed upon the liberty and property rights of plaintiff, a captain in the Warrenville police department. The order in question directed plaintiff to terminate his part-time employment with the village of Golf by March 1, 1982, and advised that failure to comply by March 1, 1982, would be a violation of the city personnel code, police department policy and a direct order. The complaint also sought a permanent injunction prohibiting defendant Hall from instituting or imposing disciplinary action against plaintiff for failure to terminate his employment with the village of Golf.

On the same day, Phillips filed a petition for a temporary restraining order without notice enjoining and restraining Hall from instituting or imposing disciplinary action against Phillips until a hearing on the matter, and it was issued that day. On March 4, 1982, Hall filed a document captioned "Memorandum of Law in Response to Complaint for Declaratory Judgment," which stated, in substance, that Phillips had no legal right to secondary employment, that he had an adequate remedy at law before the board of police and fire commissioners and that any adverse decision of that board was appealable under the Administrative Review Act so that there was no irreparable harm shown, that the order was within the police chief's authority and based on valid considerations, and concluded that the "Motion for Preliminary Injunction and Declaratory Relief be denied." The parties treated defendant's memorandum of law as an answer to plaintiff's complaint and proceeded to trial on that same date.

The evidence disclosed that petitioner, William Phillips, had been employed by the village of Golf in Cook County since 1965, and, at the time of his 1969 interview for the position of police chief with the city of Warrenville in Du Page County, he was police chief for the village of Golf. In 1978 Phillips stepped down from chief to captain in Golf, and he stepped down from chief to captain in Warrenville in July 1981. At the time the complaint was filed, Phillips was a captain in Warrenville, working approximately 40 hours per week, and he was a captain and chairman of the police safety board in Golf, working approximately 15 hours per week.

In November 1977, the city of Warrenville adopted a Manual of Rules and Regulations for the Police Department. These rules included the following provisions:

> "380.24    Outside Employment: Prior to engaging in any outside business or employment, the member or em-

ployee shall submit a request for a permit to do so to the Chief of Police via channels in the approved form.

380.25 Issuance of a Permit: The decision of the Chief of Police to issue or deny a permit to work outside of the Department is final and appeal to higher or other levels will not be considered. Departmental General Orders will govern the issuance or denial of the permit and its use.

380.36 Membership in Organizations: Except for the Armed Forces Reserve components, members and employees shall not affiliate themselves with any organization or group, the constitution or by-laws of which in any way exacts prior consideration or which would prevent its members from rendering proper and efficient service to the Department."

Warrenville adopted these rules while Phillips was chief of police, and he enforced the provisions regarding secondary employment.

On December 15, 1981, respondent, Chester Hall, became Warrenville police chief. On January 14, 1982, he sent a letter to all police personnel setting forth the secondary employment policy; requiring all officers presently working or employed elsewhere to submit a request form, which would receive a reply by February 8; and requiring termination of any secondary employment by March 1, 1982, unless permission was obtained to continue. The letter concluded as follows:

"This policy is being enacted to comply with the existing personnel policies and to insure proper administrative control over employees. Public policy requires that police officers maintain undivided loyalty and engage only in employment designed to improve police image. No employment will be approved which disrupts departmental efficiency, morale, or ability to properly supervise employees."

Pursuant thereto, Phillips filed a request for secondary employment for his village of Golf position on January 30, 1982.

On February 1 Hall wrote a letter to Phillips requesting certain information about the village of Golf position. Village of Golf responded by letter on February 17, 1982. However, on February 16, 1982, Hall had written another letter to Phillips, which stated that the requested information had not been received but, based on Hall's understanding of Phillips' duties to both Warrenville and Golf, he was

denying Phillips' request and ordered him to terminate his employment with Golf by March 1, 1982, or be in violation of the city personnel code, police department policy and a direct order.

At trial, both the village of Golf and Phillips agreed that his Warrenville job supersedes his job with Golf. Phillips' duties for Golf are primarily advisory, but he does do patrol work. He also has patrol responsibilities for Warrenville.

There have been no simultaneous emergencies requiring his attention, but, in the event of any, Phillips testified that he would choose to respond to Warrenville and arrange for assistance from the Cook County sheriff's police or Glenview Police Department for the Golf situation. Estimates of travel time for the 30-mile trip between the two municipalities ranged from 36 minutes to 1¼ hours. While Phillips and his witnesses testified that he could be and had been contacted, if needed, while on duty for Golf, Chief Hall testified that he had been unable to contact Phillips on several occasions. It was the position of Phillips and his witnesses that there was no conflict in Phillips' law enforcement functions pertaining to the two municipalities, and Warrenville Chief Hall admitted he had no knowledge of any actual conflicts that had occurred with the exception of one court date.

Regarding that court date, Phillips was on duty in Golf and missed a court date in Warrenville resulting in the *nolle prosequi* of one traffic ticket. Phillips said his absence was an oversight, that it occurred because his court date had recently been changed, and that it was the only date he had missed in over 10 years. Hall testified that, to the best of his knowledge, his directive to Phillips to terminate his Golf employment was issued prior to becoming aware of the missed court date.

Hall testified that he issued his directive because he felt the two jobs were not compatible because of (1) the loss of control over Phillips while he was engaged in police activities in Golf, noting specifically problems in the area of access to confidential information, scheduling and discipline for on-duty and off-duty infractions; (2) the appearance of impropriety in Phillips' retention of two sworn police positions; and (3) the loss of Phillips' services and Warrenville's potential obligation to pay his salary if he were injured while acting as a police officer in Golf, although, he observed, Phillips had no history of injury.

As chief since December 1981, Hall testified, he is responsible for the administration, scheduling, coordination, discipline, and enforcement of rules of the department and of the city. The secondary em-

ployment rules in question were drafted by then chief Phillips in 1977 with the advice and consent of the safety committee and police and fire commission. The city council adopted personnel procedures in March 1981 which impacted on the police department rules.

Hall testified that any incidents in Golf reflecting adversely on Phillips could be construed as an official act of Warrenville, although Phillips did not wear any portion of his Warrenville uniform while on duty in Golf or vice versa; Phillips' access to confidential police files through Golf would contravene Hall's desire for strict control over employees' access to such information; Phillips' police duties in Golf, which exactly duplicate his Warrenville official duties, violate city personnel code prohibitions on employment in work closely related to official duties and employment that would tend to influence the exercise of impartial judgment; being a police captain for two municipalities makes the public think an individual is "double dipping"; allegations of wrongdoing in either municipality would bring discredit to the Warrenville police department; other Warrenville officers felt it looked bad for a Warrenville officer to also be a police officer for another municipality; and being a sworn law enforcement officer in two places is, by its very nature, contrary because it is not possible to serve two masters in two sworn positions.

Hall observed that officers are always subject to call and that, if Phillips were called in on an emergency basis to court while on duty in Golf, he might not arrive in Warrenville in time. However, he also said it takes 20-35 minutes for him to get to Warrenville from his Villa Park home, that there is no requirement that officers stay within Warrenville or within a certain radius of Warrenville while off-duty, and that another officer, Sergeant LaDeur, had an approved part-time job delivering office furniture and working behind the counter in his father's office supply store in Villa Park.

Hall contrasted LaDeur's duties in his secondary employment with those of Phillips: LaDeur is always available to Hall when on his other job; LaDeur's furniture deliveries are strictly in Du Page County; Hall has control over LaDeur's conduct while on his other job because he is not doing police work; and LaDeur's conduct on the other job could not be construed as official or as sanctioned by the Warrenville police department.

Finally, Hall testified that he might have to call on Phillips if he needed an extra man on the street. There is one full-time police officer in Golf and six to eight part-time officers, while Warrenville has six to eight full-time police officers and seven part-time officers, with one person generally assigned to each shift. Phillips testified that

Warrenville has a mutual aid agreement with adjacent municipalities and with the county sheriff's police in the event that an emergency arose necessitating additional police personnel, but Hall testified that the Warrenville police department relies primarily on police officers in its own department to respond to police calls so that the nature, extent and integrity of the investigations or handling of incidents can be controlled.

At the conclusion of the trial, the trial court found that exhaustion of administrative remedies in this case would not serve the basic ends of justice; that the police chief's letter and the basis found thereunder were arbitrary and capricious; that the secondary employment rule had not been violated because the rule read "prior to engaging in any activity" and Phillips' secondary employment predated the new chief and continued with the acquiescence and consent of prior chiefs and prior police and fire commission members and board; that Phillips developed a property right in the job in Golf; that "the real crux here" was a possible power struggle going on between the new chief and a captain who was a former chief; that there was no insubordination; and that, if insubordination did occur, there would be adequate remedies for that. A permanent injunction thereupon issued "prohibiting Chief Hall from instituting or initiating disciplinary action against William Phillips due to his position with the Village of Golf."

The first issue we must face in this appeal is whether petitioner should have been required to exhaust his administrative remedies prior to seeking relief in the circuit court concerning secondary employment. If the principle of the exhaustion of administrative remedies is applicable in this matter, Phillips would be required to first exhaust his remedies before the Board of Police and Fire Commissioners of the city of Warrenville prior to filing this action, and his failure to do so would require the dismissal of this action. An almost identical situation was present in *Buege v. Lee* (1978), 56 Ill. App. 3d 793, and the disposition of the issue in that case appears to be controlling on the issue here.

As in *Buege*, respondent contends that relief in this case is precluded by the presence of an adequate remedy at law by way of an administrative hearing before the city board of police and fire commissioners. Because Phillips filed his complaint a few days before the termination date specified in Hall's order, he was not in violation of the order at that time. Therefore, no procedure was pending before that board, and Hall's contention essentially would force Phillips to disobey the order and then challenge its validity in a subsequent disciplinary

proceeding before the board. Hall further states that Phillips would be entitled to seek judicial review from any disciplinary sanctions imposed by the board. Ill. Rev. Stat. 1981, ch. 24, par. 10—2.1—17; Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*, now Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*

■ This court observed in *Buege* that a declaratory judgment action allows the court to intercede in a controversy after the dispute has arisen but before steps are taken that give rise to claims for damages and other relief so that the parties can learn the consequences of their action before acting. While recognizing the exhaustion of remedies principle, that a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him, this court held that the plaintiff in *Buege* should not be required to provoke a disciplinary proceeding against himself so as to provide a forum to challenge the chief's order. (*Buege v. Lee* (1978), 56 Ill. App. 3d 793, 798.) Similarly, there appears to be no reason to require Phillips to follow that course under the circumstances of this case.

This case is distinguishable from *Myers v. Cook County Police & Corrections Merit Board* (1978), 67 Ill. App. 3d 223, cited by respondent for the proposition that an order need not be *prima facie* reasonable before it is obeyed and that a police officer does not have the prerogative to disobey a direct order while seeking judicial review as to its reasonableness. In *Myers* the plaintiffs were in violation of a direct order so that the authority, discipline, and respect essential to the effective operation of the police force was threatened. (67 Ill. App. 3d 223, 229.) Here, Phillips sought a declaratory judgment prior to being in violation of Hall's order.

■ Respondent cites *Buege* for the proposition that extraordinary circumstances must exist for court intervention by way of a declaratory judgment action, and he states that those circumstances did not exist here. However, while *Buege* does say that extraordinary circumstances subject the police chief to continuing review or supervision by the courts, it goes on past the language cited by the respondent to state that the interdepartmental orders of a police chief to his subordinates are not insulated from judicial review and, in a proper case, the order may be examined to determine whether it was issued in good faith and involved a reasonable exercise of discretion. *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 796-97.

■ Under the circumstances of this case, the trial court properly found that Phillips was not barred from judicial review of the challenged order based upon a failure to exhaust administrative remedies.

Therefore, the merits of his appeal will be considered.

In this appeal, Hall first contends that the order of the trial court enjoining the enforcement of secondary employment regulations against Phillips should be reversed. This court will not substitute its opinion for the findings of the trier of fact unless the holding of the trial court is against the manifest weight of the evidence, *i.e.*, an opposite conclusion must be clearly evident. (*Comm v. Goodman* (1972), 6 Ill. App. 3d 847, 853; *Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 418.) In this case, it appears that an opposite conclusion is clearly evident.

■ Our review of the Illinois law makes apparent that in those cases dealing with the enforcement and promulgation of secondary employment rules, the propriety of promulgation of such rules is recognized. (See *Weisenritter v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 799; *Chigaros v. Murphy* (1975), 27 Ill. App. 3d 545.) Under Illinois statutory law, the corporate authorities of each municipality may prescribe the duties and powers of all police officers (Ill. Rev. Stat. 1981, ch. 24, par. 11—1—2), and, absent manifest and palpable abuse of discretion, the wisdom, necessity and propriety of any action regarding the administration of its police force is a matter for the municipality to decide. (*Cook County Police Association v. City of Harvey* (1972), 8 Ill. App. 3d 147, 149.) Moreover, in the trial court, Phillips did not challenge the municipality's authority to make such rules, he enforced the rules as chief, and he really does not contend on appeal that the making of secondary employment rules is improper.

■ The police chief has the responsibility to the community of securing maximum efficiency from the police force, and his actions should not be subject to review by the courts except to determine whether there was or was not good faith and a reasonable exercise of discretion. (*Charles v. Wilson* (1964), 52 Ill. App. 2d 14, 25-26; see *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 796-97.) The oppression and gross injustice, claimed by Phillips, that would justify judicial intervention in the exercise of discretionary power (*Stewart v. Department of Public Works & Buildings* (1929), 336 Ill. 513, 518) is simply not demonstrated by the record in this case.

Hall has three bases for denying Phillips' application for secondary employment: (1) the loss of control over Phillips while he was engaged in police activities in Golf, noting specifically problems in the areas of access to confidential information and discipline for on-duty and off-duty infractions; (2) the appearance of impropriety in Phillips' retention of two police positions; and (3) the loss of Phillips' services if he were injured while acting as a police officer in Golf.

Phillips responds that actual problems regarding lack of control, access to confidential information and discipline had not arisen during the period of over 10 years he had engaged in dual employment; that he would not be immune to discipline, but he would be subject to discipline in both Golf and Warrenville; that other government employees, *e.g.*, mayor, aldermen and general assembly members, have dual employment without concern for the question of divided loyalty and that no conflict had actually occurred in over 10 years; and that Phillips could be injured in any kind of secondary employment and had, in fact, an excellent health-related work record. His witnesses testified that there had been no actual conflicts between his Golf and Warrenville positions, several testified that they had engaged in other occupations while holding full-time elected positions, and some testified that Phillips was hired in Warrenville with full knowledge of his responsibilities to Golf.

Phillips presented evidence at trial concerning Sergeant LaDeur's other employment. He worked several hours per week in his father's furniture moving business, and Hall approved his application. However, Hall's concerns with Phillips' employment elsewhere as a sworn police officer were specifically and uniquely related to that kind of employment, and, therefore, would not apply equally to another officer's secondary employment as a furniture mover.

The efficiency of public employees generally is a legitimate and substantial government interest. (*Elk Grove Firefighters Local No. 2340 v. Willis* (N.D. Ill. 1975), 400 F. Supp. 1097, 1100, *aff'd* (7th Cir. 1976), 539 F.2d 714.) This interest is particularly strong with respect to police officers because of the need for them to act quickly and effectively to protect life and property. (*Cf.* 400 F. Supp. 1097, 1100 (applied to the need for firefighters to act quickly and effectively to prevent grievous loss of life and property).) A police department is a paramilitary institution, and discipline is necessarily inherent in such an operation. *Myers v. Cook County Police & Corrections Merit Board* (1978), 67 Ill. App. 3d 223, 229.

Hall's order was rationally related to this legitimate and substantial government interest. The evidence at trial did not controvert his testimony regarding the factors he considered in making the order and the statement in his January 14 letter setting forth the purpose of the order. Though the trial judge appears to have felt that Hall's action against Phillips was related to a power struggle between a present and former chief, there was no evidence whatsoever that such a power struggle existed and that it, or any other arbitrary factor, motivated Hall's order. The testimony at trial related basically to the

absence of any actual conflict, but the chief may properly consider potential conflicts (see *Elk Grove Firefighters Local No. 2340 v. Willis* (N.D. Ill. 1975), 400 F. Supp. 1097, 1103, *aff'd* (7th Cir. 1976), 539 F.2d 714).

■ This is not a situation where there is conflicting testimony and the credibility of witnesses is the issue. Clearly, in that case, this court would defer to the trier of fact. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352.) Rather, the uncontroverted evidence makes clear that Hall's motives were rationally based on the best interests of the city police department and that his order was issued in good faith and was not an abuse of discretion. Therefore, the trial court's finding that Hall's order was arbitrary and capricious is against the manifest weight of the evidence, and judicial intervention on that basis was unwarranted.

In addition to finding the basis for Hall's order to be arbitrary and capricious, the court found that Phillips had acquired a property right in his Golf employment. Phillips cites several United States Supreme Court cases, notably *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701, for the proposition that property rights in employment cannot be denied without due process of law. This principle has no application here. The village of Golf is not attempting to terminate Phillips' employment; the gist of Hall's order is that, if Phillips elects to continue his employment with Golf, he subjects himself to sanctions for violation of Warrenville rules. Cases cited by Phillips for the proposition that public employees cannot be treated in an arbitrary or capricious manner (*e.g., Derringer v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 239; *Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381) are also inapposite because, as discussed above, the evidence made it clearly evident that Chief Hall's actions were not arbitrary and capricious.

The court also found that the secondary employment rule was not violated in this case because rule 380.24 specifically said "prior to engaging" in any activity and Phillips' employment with Golf both predated the rule and had the consent and acquiescence of prior village officials. Phillips makes an effective argument that an administrative rule is subject to the same principles of construction as statutes (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 485) and that, where statutory language is clear and unambiguous, the only proper function of the court is to apply that language (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84). On initial reading, the rule could be construed to apply only to secondary employment obtained after the passage of the rule. On the other hand, the language can be construed

as a change in regulations regarding secondary employment and requiring approval for all secondary employment activities prior to engaging in such activities under the new rule, irrespective of when such employment commenced.

■ The conditions of public employment may be changed. Section 11—1—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—1—2) has been held to confer the power to make regulations concerning members of the municipal police force. (*City of Chicago v. O'Brien* (1915), 268 Ill. 228, 230.) Additionally, authority is found in section 10—4—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—4—1) for the general power of the municipality to set conditions and restrictions in employment. (*Redemske v. Village of Romeoville* (1980), 85 Ill. App. 3d 286.) Public employers may change the conditions of employment by changing the regulations. (See *Grobsmith v. Kempiners* (1981), 88 Ill. 2d 399; *Steinmetz v. Board of Trustees* (1978), 68 Ill. App. 3d 83.) Phillips had an expectancy based upon the anticipated continuance of the circumstances existing at the time he was hired by Warrenville (see *Andre v. Board of Trustees* (7th Cir. 1977), 561 F.2d 48, *cert. denied* (1978), 434 U.S. 1013, 54 L. Ed. 2d 756, 98 S. Ct. 727; see also *In re Support of Josic* (1979), 78 Ill. App. 3d 347), at which time secondary employment was apparently not regulated, but Warrenville exercised its right to regulate the duties and powers of its police officers (*Cook County Police Association v. City of Harvey* (1972), 8 Ill. App. 3d 147) by passing a secondary employment rule. Absent manifest and palpable abuse of discretion, the validity of this action, pursuant to the authority vested in the city by law, is a matter for legislative determination and not the subject of judicial review. *Hunt v. City of Peoria* (1964), 30 Ill. 2d 230.

Further, Phillips' argument that the rule did not apply to his Golf employment is belied by his own conduct. As chief of police for Warrenville, Phillips testified, he received and approved secondary employment applications. Additionally, he testified, he submitted his own application for secondary employment from and after the date of the adoption of the rules in 1977, although he had been working for both Golf and Warrenville since 1969.

■ ■ A reviewing court should accord substantial discretion to administrative agencies in the construction and application of their rules, interfering only if a body's interpretation is plainly erroneous or inconsistent with long-settled constructions. The doctrine does not invite arbitrariness or inconsistency from case to case, because an interpretation, like its parent statute and rule, binds the agency as its policy and must be followed. *Scheffki v. Board of Fire & Police Com-*

*missioners* (1974), 23 Ill. App. 3d 971, 973, and cases cited therein; 2 Am. Jur. 2d *Administrative Law* secs. 241, 242, 243 (1962).

Applying these principles of law and statutory construction and considering the facts of this case, we determine that the trial court erred in finding that the secondary employment rule was not violated because Phillips' Golf employment commenced prior to the passage of the rule.

The court's finding that Phillips' secondary employment with the village of Golf had the consent and acquiescence of former Warrenville officials may raise some question of estoppel. However, it is clear that Phillips did not act to his detriment based on any statement or action of Warrenville officials. (Compare *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 161-63.) At best, the record shows that, at the time Phillips was hired and during the course of his employment, Warrenville officials knew of his association with Golf and voiced no objection to it. As discussed previously, it appears that Phillips had only an anticipation of the continuance of this consent and acquiescence.

The findings of the trial court that Hall's order was arbitrary and capricious, that Phillips' property interest in his Golf position precluded Hall's action, and that Phillips' position with Golf did not violate the secondary employment rule were contrary to the manifest weight of the evidence. The injunction, therefore, was improperly granted. Having made this determination, we need not address the denial of Hall's motion to vacate the injunction based on the passage of a new secondary employment ordinance, Ordinance No. 606, superseding the ordinance that was in effect when the injunction was granted. Likewise, we need not address Phillips' motion ordered taken with the case to strike all references to Ordinance No. 606 in Hall's brief as being not properly before this court.

For the reasons set forth above, the March 4, 1982, order of the trial court granting the permanent injunction is reversed.

Reversed.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.