# Illinois Official Reports

## Appellate Court

---

**Excelsior Garage Parking, Inc. v. 1250 North Dearborn Condominium Ass'n,**
**2015 IL App (1st) 133781**

---

| | |
|---|---|
| Appellate Court Caption | EXCELSIOR GARAGE PARKING, INC., an Illinois Corporation, and CHICAGO TITLE LAND TRUST COMPANY, as Trustee u/t/a No. 1099549, Dated August 23, 1993, Plaintiffs-Appellees, v. 1250 NORTH DEARBORN CONDOMINIUM ASSOCIATION, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-3781 |
| Filed | July 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-22693; the Hon. Kathleen G. Kennedy, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Christopher M. Heintskill and Jason B. Hirsh, both of Levenfeld Pearlstein, LLC, of Chicago, for appellant.<br><br>Rita M. Alliss Powers and Caitlin M. Annatoyn, both of Greenberg Traurig, LLP, of Chicago, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Lavin and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1 After defendant, 1250 North Dearborn Condominium Association (Association), refused to provide an estoppel certificate, plaintiffs Excelsior Garage Parking, Inc., and Chicago Title Land Trust Company (collectively, Excelsior) filed a one-count action for declaratory judgment. A few days later, the Association provided an estoppel certificate, which included unreimbursed payments claimed to have benefited Excelsior.

¶ 2 Despite receipt of an estoppel certificate, Excelsior continued to press their claim, contending the Association should have provided a "clean" estoppel certificate (without mention of any defaults) due to the Association's failure to abide by the terms of the parties' agreement. The trial court declined to grant the Association's affirmative defense that Excelsior failed to state a claim on which relief could be granted and, only days after the case was filed and without any discovery, after a hearing, ordered the Association prepare and tender a "clean" estoppel certificate.

¶ 3 We conclude that under the agreement, while the Association could not refuse to provide an estoppel certificate because it believed it was owed money, neither could Excelsior demand a "clean" estoppel certificate. Once the Association tendered the estoppel certificate, albeit late under the agreement, the trial court should have granted the Association's affirmative defense that Excelsior failed to state a claim on which relief could be granted. Because the Association provided Excelsior a "clean" estoppel certificate and the sale closed, we cannot undo that part of the trial court's judgment. But, as to the trial court's improper ruling extinguishing the Association's rights to pursue reimbursement, the Association is entitled to litigate the reimbursement claim against Excelsior, should it so choose, without *res judicata* consequences.

¶ 4                                   BACKGROUND

¶ 5 Excelsior and the Association both owned and operated out of the mixed-use condominium high rise building at 1250 North Dearborn, Chicago (the property). The Association administered the condominium units at the property and Excelsior owned the three-story parking garage underneath. Both were parties to the "Declaration of Covenants, Conditions, and Restrictions," dated August 30, 1993 (Declaration).

¶ 6                                    Declaration

¶ 7 Two articles of the Declaration were at issue. Article XVIII, entitled "Estoppel Certificates," provides for the execution and delivery of an estoppel certificate within 10 days of receipt of a written request. Article V, entitled "Building Services," provides for the payment of building services according to Exhibit 5.4, which states, in relevant part, "payment for [building] services *** shall be divided at the time of the expenditure by mutual agreement of the owner of the commercial building and the Homeowner's Association representing the owners of the residential building."

¶ 8                                  Legal Proceeding

¶ 9 On September 9, 2013, Excelsior found a buyer for the property's parking garage and executed a contract for sale with a closing date of October 31. Excelsior then requested an

estoppel certificate from the Association that complied with the demands of their written request (*i.e.*, an assertion that there were no existing defaults by and no sums due from either party to the other–a "clean" estoppel certificate).

¶ 10 Ten days later, the Association, through counsel, emailed Excelsior that it was working to determine the "outstanding amounts due from the garage owner for services rendered pursuant to Exhibit 5.4 of the [Declaration]." Excelsior replied that they were "unaware" of any outstanding amounts they owed the Association and requested the estoppel certificate be returned within the required 10-day period (by September 23). Three days later, the Association sent a demand letter to Excelsior seeking reimbursement for cost allocations from 2010, 2011, 2012, and 2013, totaling $113,024.86 for services it claimed benefited Excelsior. The following day, September 27, Excelsior responded that under the parties' Declaration, they were not obligated to reimburse the Association for any expenditures because (1) the expenses were made without notice to, consent by, or agreement with Excelsior; (2) the expenses were not divided at the time they were incurred as required by the Declaration; and (3) some of the expenses had no connection or benefit to the garage. Excelsior asserted, "Exhibit 5.4 requires these contemporaneous interactions precisely to avoid a situation like this one, where one of the parties attempts to back charge for services that were incurred without the input and agreement of the other party." Excelsior reiterated its demand for a "clean" estoppel certificate.

¶ 11 On October 4, 2013, Excelsior filed suit asking the trial court to issue a declaratory order that the Association was obligated under the Declaration to execute and provide Excelsior the requested estoppel certificate. On October 8, the Association executed an estoppel certificate in the form Excelsior requested, except it included existing defaults by Excelsior in the amount of $113,024.86 for "Generator Costs, Façade Maintenance, Roof Maintenance, Elevator Maintenance and Repairs and Fire Suppression Systems," as referenced in the September 26 letter, which it attached to the estoppel certificate.

¶ 12 That same day, Excelsior requested the trial court set an early hearing on their claim arguing they would suffer irreparable harm if they did not receive a "clean" estoppel certificate before their scheduled real estate closing on October 31. Excelsior also asked the trial court to find they were not obligated to reimburse the Association for the amount it sought. Excelsior argued that even though the Association provided the services, any claim that it would have against Excelsior for reimbursement was barred because the parties never agreed on the specific amounts that Excelsior would owe "at the time of expenditure" as provided in Exhibit 5.4 of the Declaration.

¶ 13 The following day, the Association filed its answer to the complaint and a preliminary response to Excelsior's request for an early hearing on their declaratory judgment claim, including their affirmative defenses. The Association contended Excelsior failed to state a claim on which relief could be granted, the Association having provided the required estoppel certificate, just not a "clean" one as Excelsior demanded.

¶ 14 On October 15, 2013, the trial court granted all the relief Excelsior requested and issued a written order two days later. Finding the parties' Declaration was clear and unambiguous, the court ordered the Association to provide Excelsior with an estoppel certificate that conformed to the form and substance sought by Excelsior. The trial court held that because the Association did not respond to Excelsior's claim that the Association "had not notified Excelsior Garage of these expenditures at the time that they purportedly were incurred, nor had

it obtained Excelsior Garage's consent, as required by the Declaration," Excelsior's facts in their verified complaint were admitted. The court further barred any claim to reimbursement that the Association had against Excelsior due to not mutually agreeing on the division of the costs "at the time of expenditure" as provided for in the Declaration.

¶ 15 The Association moved for emergency reconsideration. After full briefing, on October 30, 2013, the court denied the Association's request and ordered it provide Excelsior a "clean" estoppel certificate in the form they demanded by 10 a.m. the next day. The Association complied and, at oral argument, it was reported that the sale went through.

¶ 16 The Association argues Excelsior "manufactured [a] crisis" by seeking an immediate adjudication of a "straightforward" breach of contract claim for money damages due the Association. Excelsior replies that "time was of the essence," and for that reason they filed a single-count complaint under section 2-701(a) of the Code of Civil Procedure (735 ILCS 5/2-701(a) (West 2012)) asking the trial court to interpret the Declaration between the parties and clarify their rights and obligations, specifically as they related to Excelsior's request for a "clean" estoppel certificate and the Association's claim for unreimbursed expenses.

¶ 17 The Association seeks reversal on the grounds that the trial court improperly required the Association to issue a "clean" estoppel certificate and interpreted the parties' Declaration to bar the Association from seeking reimbursement of all expenses for services it provided Excelsior.

¶ 18                                   Standard of Review

¶ 19 As a question of law, we review *de novo* the denial of a motion to dismiss. *Simmons v. Homatas*, 236 Ill. 2d 459, 477 (2010).

¶ 20                                        ANALYSIS
¶ 21                                 Declaratory Judgment Act

¶ 22 Section 2-701 of the Code of Civil Procedure, known as the Declaratory Judgment Act (Act) (735 ILCS 5/2-701(a) (West 2012)), "allows the court to take hold of a controversy one step sooner than normally–that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting." (Internal quotation marks omitted.) *Beahringer v. Page*, 204 Ill. 2d 363, 372-73 (2003). Actions seeking declaratory relief should "settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right." (Internal quotation marks omitted.) *Id.* at 373.

¶ 23 There are three elements of an action for declaratory judgment: (1) the plaintiff has a tangible legal interest, (2) the defendant has an adverse interest, and (3) an actual controversy regarding that interest exists. *Local 1894 v. Holsapple*, 201 Ill. App. 3d 1040, 1050 (1990).

¶ 24 Under the Act, Excelsior was not entitled to a ruling of ultimate relief on the pleadings, just a ruling on their rights under the contract. There were two separate issues before the court: (1) the estoppel certificate and (2) the reimbursement claim. By combining the issues and holding the Association could not refuse to provide a "clean" estoppel certificate, the trial court improperly reached the merits of the reimbursement claim.

Procedural Outcome

¶ 26        The Association argues the trial court erred procedurally by improperly disposing of Excelsior's claims as an "emergency" without a showing of irreparable harm or receiving evidence on the existing factual issues. Excelsior contends the trial court properly exercised its powers under the Act and Excelsior used the Act for its intended purpose–to ask the court to interpret a contract so that the parties could decide their course of action with an understanding of the resulting consequences.

¶ 27        We need not consider the "emergency" nature of the proceedings because, the Association having not sought a stay, provided a "clean" estoppel certificate and the sale has closed. What we can decide, however, is whether the trial court should have heard and ruled on the issue of the Association's contract claim for monies claimed due under the parties' agreement. As to that question, once the Association tendered an estoppel certificate, the trial court should have dismissed the lawsuit.

¶ 28        When Excelsior filed their action, they met the first element of a declaratory judgment action in that they had a legally tangible interest to pursue and effectuate–the garage's sale. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 310 (2008) (" '[T]he privilege of every citizen to use his property according to his own will is both a liberty and a property right.' " (quoting *Western Theological Seminary v. City of Evanston*, 325 Ill. 511, 521 (1927))). Excelsior also had a legally tangible interest in enforcing their rights under the Declaration to have the Association provide an estoppel certificate within 10 days of their properly delivered written request. See *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300, 311 (2003) ("binding declaration of [plaintiff's] rights under its contracts with [defendants] will help dispel the parties' uncertainty by ensuring that whoever ultimately pays these costs will do so knowing whether or not it is legally responsible for them"). Concerning the second element–defendants have an opposing interest–the Association refused to provide the clean estoppel certificate until Excelsior reimbursed it for the claimed expenses. But, as to the third element–the existence of an actual controversy–by the time of the hearing, none existed because the Association had tendered an estoppel certificate.

¶ 29        In reaction to the lawsuit, the Association provided Excelsior with an estoppel certificate, which included existing defaults it believed it was owed. Nothing in the Declaration requires the Association provide a "clean" estoppel certificate, relinquish any contract claim in complying with the request for an estoppel certificate, or execute a document it believed to be untrue. In this regard, the Declaration, specifically subsections (b) and (c), merely requires delivery of a certificate within 10 days of its request, which affirms:

> "(b) whether there is any existing default hereunder by the other Owner and, if so, specifying the nature and extent thereof;
>
> (c) whether there are any sums (other than those arising out of the normal course of operation of the Building within the previous forty-five (45) days) which the Owner executing such Estoppel Certificate is entitled to receive or demand from any of the other Owners, and if there is any such sum, specifying the nature and extent thereof."

¶ 30        The Association complied with the terms of the Declaration when it executed an estoppel certificate that stated there were existing defaults by Excelsior and sums due in the amount of $113,024.86 as of October 8. Including its reimbursement claim in the estoppel certificate was an appropriate means of preserving the contract claim the Association believed it was entitled to. "A purpose of an estoppel certificate is to give assurance that the party making the estoppel

statement 'at a later date will not make claims that are inconsistent with the statements contained in the estoppel certificate.' [Citation.]" *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 26. An estoppel certificate is "[a] signed statement by a party (such as a tenant or a mortgagee) certifying for another's benefit that certain facts are correct, such as *** there are no defaults ***. A party's delivery of this statement estops that party from later claiming a different state of facts." Black's Law Dictionary 631 (9th ed. 2009). "Estoppel certificates are important and useful devices to preserve and enhance the marketability of commercial property. They are widely used in commercial real estate transactions." *K's Merchandise Mart, Inc. v. Northgate Ltd. Partnership*, 359 Ill. App. 3d 1137, 1143 (2005). Estoppel certificates are "critical" in commercial real estate transactions because they "inform prospective buyers and lenders of the lessees' understanding of the lease agreement." *Robert T. Miner, M.D., Inc. v. Tustin Avenue Investors, LLC*, 10 Cal. Rptr. 3d 178, 183 (Cal. Ct. App. 2004). "By providing independent verification of the presence or absence of any side deals, estoppel certificates prevent unwelcome post-transaction surprises that might adversely affect the building's income stream ***." *Id.*

¶ 31    Having provided the estoppel certificate, the controversy between the parties was over and a declaration of rights under the contract was no longer necessary. See *Clyde Savings & Loan Ass'n v. May Department Stores*, 100 Ill. App. 3d 189, 192 (1981) ("actual controversy" requires a showing that the underlying issues are not moot or premature; a "court is not required to pass judgment on mere abstract propositions of law, to render an advisory opinion or to give legal advice as to future events"). Excelsior received an estoppel certificate–all they were entitled to under the Declaration. There was no evidence the sale would not close based on the tendered estoppel certificate. For example, Excelsior does not suggest that had they agreed to indemnify and hold harmless the buyer against any claims by the Association for services rendered prior to closing, the sale would not have gone forward. Argument to that effect was purely speculative. The trial court erred by not dismissing the case at this point. Under the parties' agreement, Excelsior was not entitled to a "clean" estoppel certificate, so once the Association tendered an estoppel certificate to Excelsior–all they were legally entitled to receive–the trial court should no longer have been involved.

¶ 32    The Association, however, did not request a stay of the trial court's order to contest its validity. It complied with the court's order and provided a "clean" estoppel certificate to Excelsior and the sale went through. Accordingly, there is no relief we can provide. We cannot undo the closing or reverse the form of the estoppel certificate the trial court erroneously required the Association to provide for purposes of the closing and, therefore, this issue is moot. See *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 511 (2001) ("A case can become moot when, pending the decision on appeal, certain events occur that render it impossible for the reviewing court to grant effectual relief to either party." (citing *Bluthardt v. Breslin*, 74 Ill. 2d 246, 250 (1979))). Further, due to the lack of a stay, the Association, if successful on its breach of contract claim, may enforce a judgment only against Excelsior and not against the buyer or the buyer's interest in the property. So although the Association is estopped *vis-à-vis* the buyer, it is entitled to litigate its breach of contract claim against Excelsior.

¶ 33                                    Reimbursement Claim

¶ 34     Concerning the Association's reimbursement claim, the trial court improperly ruled on the merits of the claim and granted ultimate relief. The claim was not properly before the court. Excelsior's request for a declaratory judgment on the Association's reimbursement claim was not the appropriate means for Excelsior's requested relief. The Act was created to offer a resolution of disputed rights before action is taken in potential prejudice of those rights. *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300, 311 (2003) (citing *Phillips v. Hall*, 113 Ill. App. 3d 409, 417 (1983)). Although that purpose can be served even when another cause of action is available, such as the right to bring a breach of contract claim (*id.*), the facts of this case do not serve the Act's purpose. A binding declaration of Excelsior's rights under their Declaration with the Association concerning the reimbursement claims was not possible on the face of the document. Liability concerned the past conduct of both parties. There were factual issues that needed to be resolved–specifically, (1) whether the services the Association provided benefited just the Association or both parties; (2) if all of the services benefited both parties, whether Excelsior was notified of $43,000 of the $113,000 worth of services for which the Association seeks reimbursement; and (3) what remedy the contract provides when a breach occurs, *i.e.*, does failure to comply with the notice requirement translate to free services for Excelsior? There was no declaratory relief available after Excelsior received the estoppel certificate; the reimbursement claim is not proper for declaratory relief. The trial court's ruling improperly extinguished all of the Association's contract claims prematurely. See *Howlett v. Scott*, 69 Ill. 2d 135, 143 (1977) (the principle of nonliability for past conduct means a party cannot seek declaratory relief to excuse itself from liability incurred after acting in a way that would affect contractual rights); see also *Eyman v. McDonough District Hospital*, 245 Ill. App. 3d 394, 396 (1993) (plaintiff had already "embarked on a course of conduct" and, therefore, was not seeking to learn the consequences of actions before acting; claim for declaratory relief not proper); see also *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 284 (2007) ("the only circumstance that would cause a court to dismiss a declaratory-judgment action would be where no future conduct is left to be guided by the court and the declaration would simply be a declaration of liability on past conduct"). The purpose of the Act is to allow the court to address the controversy one step sooner than normal, after a dispute has risen but before steps have been taken that give rise to a claim for damages. *Beahringer*, 204 Ill. 2d at 372-73. Here, the parties had already chosen a course of conduct. Accordingly, we vacate this portion of the trial court's order.

¶ 35                                         CONCLUSION

¶ 36     By the Association's failure to request a stay, the trial court's order requiring it to provide a "clean" estoppel certificate to Excelsior, although erroneous, was rendered moot when the Association provided the certificate in the form requested and the sale went through.

¶ 37     We vacate that part of the trial court's order precluding the Association from seeking reimbursement for services it may have provided Excelsior under the parties' contract. In doing so, we note *res judicata* will not preclude a subsequent action should the Association choose to litigate the reimbursement claim.

¶ 38          Affirmed in part and vacated in part.