DAVID E. WAGNER, JR., Plaintiff-Appellant, *v.* GEORGE KRAMER, Sheriff of Kane County, *et al.*, Defendants-Appellees.

Second District   No. 2—83—0621

Opinion filed June 13, 1984.—Rehearing denied July 19, 1984.

Stanley H. Jakala and Daniel P. Jakala, both of Berwyn, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (David R. Akamann and William F. Barrett, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Sergeant David E. Wagner, Jr., a deputy sheriff of the Kane County Sheriff's Department, appeals the dismissal of his complaint for administrative review by the circuit court of Kane County. The court ruled that no extraordinary circumstances existed to authorize its review of a five-day disciplinary suspension. Plaintiff on appeal contends that the facts of his case constituted extraordinary circumstances authorizing judicial review. Defendants maintain that certain precautionary measures taken by the sheriff's department before giving plaintiff a direct order were established by the evidence and that the order was reasonable.

Plaintiff was suspended for a period of five days for violations of departmental standard operating procedures, regulation 6—3, sections

7—2 and 7—35:

> Rule 7—2, Disobedience of Orders. "Failure to obey and fully execute any lawful orders, written or oral, given by a superior officer * * *."
>
> Rule 7—35, Insubordination. "* * * Any failure or deliberate refusal to obey a lawful order given by a superior * * *."

On Tuesday, May 4, 1982, a writ for detention and quarantine was forwarded to the sheriff's office from the State's Attorney's office requiring transportation of an individual infected with tuberculosis from her Aurora home to the Aurora Mercy Center Hospital. The written order was shown to both duty sergeants, one of whom was plaintiff. Both men expressed some concern about ordering their men to handle this type of call.

Included in the Rule and Order of Quarantine and Isolation was the following language:

> "[The patient] * * * is infected with Tuberculosis in a communicable state, and WHEREAS Tuberculosis in a communicable state is dangerous to the health of the public, as well as the individual, and, as a matter of protection of the public health, such communicable cases of Tuberculosis ought to be quarantined and confined. * * *"

No further action was taken on May 5 relative to the transportation of the patient or the actions of plaintiff since it was determined that the patient was unavailable that day in any event. On May 6 the sheriff's office received a call that the patient was at her home and was to be transported to the hospital. Plaintiff was then contacted by his superior officer, Lieutenant Grimes, and directed to follow, in his police vehicle, another officer and vehicle that were transporting the patient. He was to act as "back-up." He was advised that he would not have to leave his car unless there was trouble.

Plaintiff refused to obey the order. He was then told to go home.

On May 7 a disciplinary hearing was held by the sheriff's board of inquiry at which the charges were detailed for plaintiff and the basis for the charges was explained to him. Plaintiff explained that he felt the order in question was unjustifiable in that he was never trained to transport individuals with communicable diseases, "especially diseases for which there is no known cure or method of prevention available to assure him that he would not contact [sic] the disease." He further explained that he believed he was being asked to put himself, as well as his family and fellow officers, in a dangerous situation and that other alternatives should have been considered, especially since it was not an extreme emergency situation. He considered this type of order

as calling for more than was required by his job description and that it was not an "ordinary police duty." Under these circumstances he believed that he was not in violation of a legal order.

During the hearing it was disclosed that plaintiff's superior officer had talked to the registered nurse who accompanied the patient during the transportation of the patient to the tuberculosis facility. The superior officer said he was advised by the nurse that the disease was not as communicable as had been publicized. He further stated the nurse at the TB clinic did inform him that the disease was communicable by means of saliva but that infected persons on medication are not contagious. In the present case, however, the individual was being returned to the clinic because she was found not to be taking her medication. The superior officer also added that he considered the possibility of transportation via ambulance, but the cost would have been charged to the department, and if the individual refused to cooperate with the ambulance personnel, the department would still have been responsible for execution of the court order.

The record fails to disclose that prior to refusing the order of Lieutenant Grimes, plaintiff was advised of the information provided Grimes by the registered nurse. Further, it does not appear in the record that the plaintiff was told of a letter written by the medical director of the Kane County Tuberculosis Clinic to the sheriff three weeks earlier dated April 14, 1982. Thus, plaintiff was not told by his superiors of Dr. Richard C. Bodie's statement that:

> "[F]ortunately Tuberculosis is not a highly contagious infection. It is primarily and almost exclusively acquired by inhalation of organisms coughed out by the patient who had an active disease and whose sputum contains viable Tuberculous organisms. Generally the amount of contact needed to acquire Tuberculous infection is considerable. Casual contact is rarely a source of Tuberculous infection. Therefore in terms of contagion only those people who have been in close contact with an active case of Tuberculosis, primarily family Members [sic] are at any appreciable risk.*** Tuberculosis is not acquired by handling patient's clothing or other personal effects or using even the same eating utensils. The infection is an air borne one and people become infected solely by that route."

Dr. Bodie also stated:

> "[O]ur experience in the past has been that considerable fear has been engendered among a large number of people needlessly when an active case of pulmonary Tuberculosis has been part of their environment ***"

and that he hoped his explanation would be of help to the sheriff's personnel in understanding the modern-day concept of tuberculosis.

The testimony at the hearing further disclosed that when Undersheriff Perez was consulted by Lieutenant Grimes regarding plaintiff's refusal, he stated that he understood plaintiff's reasons but if given a direct order by a superior officer, an officer must comply or suffer the consequences. Whether his excuses were valid or invalid, "an order is an order." Perez indicated that had an ambulance been summoned to transport the patient it is to be assumed that a "back-up" would still have been necessary.

Lieutenant Grimes related that upon arrival at the hospital no extraordinary services were provided for the patient even though she was being admitted for a communicable disease. No special precautions were taken by persons in close proximity to the patient, such as masks or gowns. The patient was taken to her room in an elevator in which were riding several other persons. The hospital had been aware of the patient's pending arrival and admission.

The hearing before the sheriff's board of inquiry concluded with the imposition of the five-day suspension by the sheriff.

On May 12, 1982, plaintiff telephoned the sheriff's merit commission of Kane County and requested a hearing on the suspension. The request was denied. Upon appeal to the trial court for administrative review, the case was remanded with the requirement that the plaintiff file a written request for a hearing with the commission and obtain a written answer. On November 9, 1982, the written request for review was also denied. The commission indicated that by law there was no right to a merit commission hearing to review a suspension of five days or less. It also stated however, that it had requested the sheriff to provide other relevant documents which were then examined. The conclusion reached by the merit commission was that there was no extraordinary circumstances present which would warrant an exception to the general rule.

On December 13, 1982, the plaintiff again filed a complaint for administrative review of the merit commission's denial of review of the sheriff's imposition of a five-day suspension. It appears however that the court interpreted the complaint for administrative review as a complaint for judicial review of the sheriff's order as its final order of June 9, 1983, provides "that there being no extraordinary circumstances present giving the Court judicial authority to review the Sheriff's Department order in question, the Motion to Dismiss is granted." Plaintiff's notice of appeal filed June 6, 1983, asks for review of the trial court's order and the issues addressed by the parties on appeal

relate to the review of the sheriff's order of the five-day disciplinary suspension.

Plaintiff contends his due process right to review of his five-day disciplinary suspension was denied when his complaint for administrative review was dismissed by the circuit court. He argues that the facts in his case constitute extraordinary circumstances warranting judicial review under this court's opinion in *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 372 N.E.2d 427. He concludes that if he were infected by tuberculosis he could be discharged (*People ex rel. Ballinger v. O'Connor* (1957), 13 Ill. App. 2d 317, 142 N.E.2d 144). He also argues that he had an obligation to prevent transmission by himself of communicable diseases by requiring that appropriate precautionary measures be taken by his superiors.

Defendants do not appear to directly contest plaintiff's assertion to a due process right of review for a five-day disciplinary suspension other than to argue to this court that the sheriff's department took proper precautionary measures. Defendants contend the sheriff based his formulation of the transportation procedure upon the expert written medical opinion of the medical director of the tuberculosis center, Dr. Richard C. Bodie. However, defendants do not contend that plaintiff was made aware of Dr. Bodie's letter.

Defendants further argue that the order was reasonable because the sheriff was ordered by the circuit court to transport the patient and plaintiff's refusal to do so would subject the sheriff to contempt. Defendants maintain that use of a private ambulance would, nonetheless, require the use of sheriff's personnel to insure that the court order was executed. Defendants also contend that the administrative agency findings of the sheriff's board of inquiry are held to be *prima facie* true and correct (Ill. Rev. Stat. 1981, ch. 110, par. 274), and that a court is only authorized to set them aside if they are against the manifest weight of the evidence and this same standard applies to review in the appellate court. (*Pratico v. Board of Fire & Police Commissioners* (1967), 82 Ill. App. 2d 377, 387, 226 N.E.2d 505, 510.) Defendants maintain that the order was not arbitrary, unreasonable or unrelated to the requirements of the sheriff's service. (See *Lakin v. Gorris* (1983), 113 Ill. App. 3d 1034, 1039, 448 N.E.2d 215, 219.) Disobedience of a proper order, contends defendants, constitutes a cause for suspension. *Zinser v. Board of Fire & Police Commissioners* (1961), 28 Ill. App. 2d 435, 439, 172 N.E.2d 33, 34-35.

First, we note that plaintiff is not appealing here the denial of the Kane County Sheriff's Merit Commission to grant plaintiff a hearing. The commission, like the circuit court, grounded its denial on the lack

of extraordinary circumstances. However, we note that under the Sheriff's Merit System Act (Ill. Rev. Stat. 1983, ch. 125, par. 151 *et seq.*), merit commissions have no authority to review disciplinary actions of the sheriff. Rather, disciplinary suspensions cumulating more than 30 days in any 12-month period are initiated by the sheriff before the merit commission (Ill. Rev. Stat. 1983, ch. 125, par. 164), while those cumulating 30 days or less in any 12-month period are administered by the sheriff exclusive of the merit commission (Ill. Rev. Stat. 1983, ch. 125, par. 163). It is the latter type of disciplinary suspension which is implicated in the present case. Finally, the record does not disclose that the Sheriff's Merit Commission of Kane County or any other body has been established by ordinance in Kane County to review the disciplinary actions reserved to the sheriff under the Sheriff's Merit Systems Act following his imposition of discipline upon the findings of his board of inquiry.

In *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, the supreme court construed section 10—1—18.1 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1), which provided that "[n]othing in this Section limits the power of the superintendent to suspend a subordinate for a reasonable period, not exceeding 30 days." The court held that the superintendent's power, nonetheless, was limited by the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and section 2 of article 1 of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2). The court said:

> "If, then, it is clear that there are outer limits to the superintendent's power of suspension and that the public policy of this State has generally provided for some form of review of suspensions, if section 10—1—18.1 of the Municipal Code is to survive constitutional attack on due process and equal protection grounds, we must construe it to provide for some manner of review of suspensions for less than 30 days.
>
> * * *
>
> It is clear from all of the statutes and rules set forth above that a major difference between a suspension for less than 30 days and a suspension for more than 30 days is that the latter requires a hearing before the sentence can be imposed. In effect, the department has the duty to go into a hearing and prove its case for suspension of more than 30 days. In the former instance, the burden is on the employee to seek review and establish why the suspension is unwarranted. Therefore, we hold that the plaintiff is entitled to an opportunity to review his suspension, and that, in order to uphold the suspension, it

must be approved by a majority of the police board. If the board does not approve the suspension, it shall enter appropriate orders to place the plaintiff in the same position as had the suspension not been levied in the first instance." (*Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 26-27.)

While *Kropel* decided issues arising under the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18), and the court also analyzed the Personnel Code (Ill. Rev. Stat. 1973, ch. 127, par. 63b101 *et seq.*), the holding in *Kropel* controls the disposition of this case, and plaintiff is entitled to review of his suspension.

Plaintiff's reliance on this court's decision in *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 372 N.E.2d 427, is misplaced. The *Buege* court applied the "extraordinary circumstances" test in determining whether the circuit court should entertain a complaint for declaratory judgment involving orders of a chief of police. By contrast, the instant question is whether a police officer is entitled to administrative review of a disciplinary suspension for disobedience of an order. The *Buege* court observed that *Buege* would be a different case if charges were pending in a disciplinary proceeding (56 Ill. App. 3d 793, 798, 372 N.E.2d 427, 432). The court acknowledged that in a disciplinary proceeding the party aggrieved cannot seek review in the courts until he has exhausted his administrative remedies citing *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358. However, the court distinguished a declaratory judgment action from review of a disciplinary proceeding as one allowing the court to take hold of a controversy before claims arise for damages or other relief. In sum, *Buege* does not purport to establish a standard of extraordinary circumstances before judicial review of an administrative action can be undertaken in the circuit court.

■ We conclude that plaintiff is entitled to administrative review of his five-day suspension (see *Kropel v. Conlisk* (1975), 60 Ill. 2d 17; see also *Zook v. Hedrick* (1977), 52 Ill. App. 3d 736, 367 N.E.2d 1356), without regard to the declaratory judgment standard of extraordinary circumstances involved in *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 372 N.E.2d 427. Further, since the Sheriff's Merit System Act (Ill. Rev. Stat. 1983, ch. 125, par. 151 *et seq.*) does not provide for review by the sheriff's merit commission nor is any review afforded under the ordinances of Kane County based upon the record before us, then the appropriate method of review of the sheriff's imposition of the suspension, as a final administrative action, is in the circuit court (*Lakin v. Gorris* (1983), 113 Ill. App. 3d 1034, 1038, 448 N.E.2d 215, 218; see also *Robinson v. Cook County Police & Corrections*

*Merit Board* (1981), 93 Ill. App. 3d 1051, 1052, 418 N.E.2d 170, 172), by writ of *certiorari* (see *Drury v. Hurley* (1949), 339 Ill. App. 33, 88 N.E.2d 728). We view plaintiff's complaint for administrative review in the circuit court to be a cause of action for common law *certiorari* (see *Buccieri v. Wayne Township* (1982), 111 Ill. App. 3d 396, 444 N.E.2d 249), and remand the cause to the circuit court for administrative review.

We are aware of the prior decision of the appellate court in *McCoy v. Brown* (1981), 100 Ill. App. 3d 988, 427 N.E.2d 619. In *McCoy* the court reversed the trial court's dismissal of the defendants' affirmative defense, which pleaded:

"[C]onstitutional provisions for due process do not require a hearing before the Sheriff's Department Merit Commission where the suspension is for a period of 5 days; that plaintiff was notified that within 72 hours he might appeal the suspension to the 'Departmental Disciplinary Appeal Board' established by the sheriff, and further alleged alternatively, that prior to the suspension the sheriff conducted an investigation of the misconduct for which suspension was imposed, including an interview between the sheriff and the plaintiff in December 1978; two interviews between the sheriff, his chief deputy and plaintiff in March 1979; a polygraph examination of plaintiff in February 1979, and interviews and polygraph examinations of potential witnesses and suspects in the matter of the alleged misconduct. It is further alleged that in the interviews with plaintiff, the sheriff explained the misconduct charged and plaintiff was given an opportunity to respond and explain his version of the events. The answer and affirmative defenses were verified by the sheriff, and no denial of the allegations appears in the record." (*McCoy v. Brown* (1981), 100 Ill. App. 3d 988, 989, 427 N.E.2d 619, 620.)

As in the case at bar, the plaintiff was a deputy sheriff who had been suspended by the sheriff for five days.

*McCoy* may be distinguishable from the case at bar on the grounds that the *McCoy* court observed that the plaintiff there was entitled to a review of his suspension by the Sheriff's Departmental Disciplinary Appeal Board. We are not made aware of whether the *McCoy* plaintiff attempted and was refused review by that board as well as the merit commission. Nonetheless, the mechanism of departmental review was not available in the instant case. Failure of the plaintiff in *McCoy* to exhaust his administrative remedies ordinarily would be a basis for denial of judicial review. See *Illinois Bell Tele-*

*phone Co. v. Allphin* (1975), 60 Ill. 2d 350.

We agree with that part of *McCoy* which appears to hold that a deputy sheriff is not entitled to a review of the sheriff's suspension by the sheriff's merit commission. As noted earlier in this opinion, there appears to be no statutory obligation on the merit commission to review suspensions by the sheriff cumulating 30 days or less in any 12-month period. Ill. Rev. Stat. 1983, ch. 125, par. 151 *et seq.*

However, we are compelled to disagree with reasoning in *McCoy* which appears to suggest no review is required of suspensions of deputy sheriffs of one week of scheduled working days or less. In so doing we address ourselves to the holding of *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, which contains the language upon which the *McCoy* court appears to rely for its reasoning:

> "[I]t is clear from the statutes and rules above set forth that the public policy of this State, regardless of any constitutional considerations, is that a disciplinary suspension of more than 1 week of scheduled working days cannot be levied without providing some means of review of the suspension." *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 25.

It is apparent from the holding in *Kropel* that the supreme court's analysis of certain statutes, and its statement of public policy derived therefrom, does not preclude review of suspensions of *less* than one week. In light of the *Kropel* holding, the above-quoted statement cannot be fairly construed as authority that suspensions of deputy sheriffs for five days or less are not reviewable. The court held:

> "[I]f, then, it is clear that there are outer limits to the superintendent's power of suspension, and that the public policy of this State has generally provided for some form of review of suspensions, if section 10—1—18.1 of the Municipal Code is to survive constitutional attack on due process and equal protection grounds, we must construe it to provide for some manner of review of suspensions for less than 30 days." *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 26.

The *McCoy* court also relied in part on *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729. There, the United States Supreme Court held that students suspended from educational institutions for less than 10 days were entitled to the rudimentary due process of being advised of the accusation against them, the basis of it and an opportunity to respond so as to avoid arbitrary suspensions and mistakes. We believe *Goss* is distinguishable on its facts from the cases of suspended deputy sheriffs as in both *McCoy* and the instant case. In *Goss* the court's concern was to avoid overwhelming the edu-

cational system with full hearings for countless brief suspensions. The court said:

> "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." (419 U.S. 565, 582, 42 L. Ed. 2d 725, 739, 95 S. Ct. 729, 740.)

The court further stated:

> "We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and *** cost more than it would save in educational effectiveness. ***
>
> On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect." (419 U.S. 565, 583-84, 42 L. Ed. 2d 725, 740, 95 S. Ct. 729, 740-41.)

The court continued:

> "We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions *** may require more formal procedures." 419 U.S. 565, 584, 42 L. Ed. 2d 725, 740, 95 S. Ct. 729, 741.

To the extent that the holding in *McCoy* was based upon the existence of Departmental Disciplinary Appeal Board and the plaintiff's failure to exhaust his administrative remedies, we distinguish *McCoy* from the case at bar. To the extent that *McCoy* interprets *Kropel* and *Goss* as precluding a right to review of suspension of deputy sheriffs of five days or less, we decline to follow it.

Upon remanding this cause to the trial court we observe that the permissible scope of judicial inquiry concerning factual determinations of the sheriff is limited to ascertaining if the sheriff's findings were contrary to the manifest weight of the evidence. (See *Basketfield v. Police Board* (1974), 56 Ill. 2d 351; *Carrigan v. Board of Fire & Po-*

*lice Commissioners* (1984), 121 Ill. App. 3d 303, 459 N.E.2d 659.) The standard to be applied as to the adequacy of cause for the five-day suspension is whether the decision was arbitrary, unreasonable or unrelated to the requirements of the service. See *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill.2d 547; *Carrigan v. Board of Fire & Police Commissioners* (1984), 121 Ill. App. 3d 303, 459 N.E.2d 659; *Lakin v. Gorris* (1983), 113 Ill. App. 3d 1034, 448 N.E.2d 215.

We reverse the judgment of the circuit court of Kane County and remand for further proceedings.

Reversed and remanded.

SEIDENFELD, P.J., and HOPF, J., concur.