# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Taylor v. Police Board*, 2011 IL App (1st) 101156

| | |
|---|---|
| Appellate Court Caption | ROBERT E. TAYLOR, SR., Plaintiff-Appellant, v. POLICE BOARD OF THE CITY OF CHICAGO, and GARRY F. MCCARTHY, Superintendent of Police, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-1156 |
| Filed | November 4, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a decision of the Police Board of the City of Chicago discharging plaintiff for committing perjury and making false statements before two tribunals, the appellate court reversed the Board's finding that plaintiff committed perjury, since plaintiff's denial that he testified in divorce proceedings involving his first wife was not material to the issues in the criminal harassment proceeding against his second wife in which he issued his denial, but the appellate court affirmed the Board's conclusion that plaintiff's false statements in two different court proceedings violated Rule 2 of the police department and the cause was remanded for a determination of whether a lesser punishment based solely on the violation of Rule 2 was warranted |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-26205; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Kenneth James Hogan, of Kenneth James Hogan, P.C., of Chicago, for appellant. |
|---|---|
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, Suzanne M. Loose, and David Pryor, Assistant Corporation Counsel, of counsel), for appellees. |
| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. Presiding Justice R. Gordon and Justice Lampkin concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff Robert E. Taylor, Sr., appeals the decision of the Police Board of the City of Chicago (Board) discharging him from his position as a Chicago police officer for committing perjury in violation of Rule 1 of the Chicago Police Department (Department), which prohibits "[v]iolation of any law or ordinance," and for making false statements before two different tribunals in violation of the Department's Rule 2, which prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department." Chicago Police Department Rules and Regulations, art. V, Rs. 1, 2 (1973) (published online 2011). Taylor contends the Board's prior disciplinary action against him for bigamy, in which he was found not guilty, precludes the instant action based on *res judicata*. We find the bigamy charges stemmed from a different group of operative facts than the perjury and false statements charges for *res judicata* purposes. Taylor also argues he was not guilty of perjury because the allegedly perjurious testimony was not material to the proceeding in which it was given. In a criminal proceeding involving charges of harassment against his second wife, Taylor falsely stated that he did not testify in a divorce proceeding involving his first wife. We agree with Taylor that whether he testified in the prior divorce proceeding had no bearing on the issues in the criminal proceeding involving a charge of criminal harassment against his second wife. Because the false testimony was not material to the disposition of the criminal proceeding, Taylor did not commit perjury. However, the Board's decision that Taylor knowingly made false statements in that criminal proceeding and in the divorce proceeding involving his first wife was not against the manifest weight of the evidence. We do not disturb the Board's conclusion that Taylor violated the Chicago Police Department's Rule 2. We reverse in part and remand for reconsideration of the appropriate punishment based solely on the violations of Rule 2.

¶ 2                                           BACKGROUND

¶ 3        Taylor was a Chicago police officer from October 23, 1973, until his discharge on June 19, 2008. During that time he received over 20 honorable mentions for his work with the Department, a commendation from the Department for bringing credit to the Department, and a letter from the Chicago Transit Authority commending his work. He was, however, subject to six disciplinary actions, including three episodes of suspension without pay for failure to attend court in 2004 and a reprimand for engaging in a preventable accident that same year.

¶ 4        Taylor and Tamela R. Baker were married in 1982, and Robert (Robbie) E. Taylor III was born to the marriage. Taylor and Tamela lived together in Chicago until Tamela moved to Sikeston, Missouri, with Robbie in 1995. According to Taylor, he hired an attorney to secure a divorce from Tamela and assumed the attorney did so while Taylor made frequent trips overseas to serve in the United States Air Force Reserve.

¶ 5        In November 2002, Taylor and Bridgette A. Jones applied for a marriage license. Taylor indicated in the application that he had never before been married. He and Bridgette were married in December 2002.

¶ 6        In January 2004, Taylor filed a petition for dissolution of his marriage to Tamela. Although he knew Tamela lived in Sikeston, Missouri, and had spoken with Tamela and Robbie on the telephone at the address where they lived, Taylor certified in the petition that he was unaware of Tamela's "current residence or whereabouts." His counsel served Tamela with notice of the divorce proceeding by publication. At a prove-up hearing on March 10, 2004, before Judge Eileen Brewer, Taylor was asked, "So you just could not find out where she lives?" He responded, "That's correct, your Honor." The judge then entered a judgment for dissolution of marriage.

¶ 7        In August 2004, Taylor pressed criminal charges against Bridgette, alleging that after she learned he was still married to Tamela while he was married to Bridgette, she damaged some of his property and threatened in a telephone call that she would inform the Department that he had committed bigamy, which would jeopardize his employment. At a hearing on the charges before Judge Gloria Coco, Bridgette's counsel asked Taylor on cross-examination about the divorce proceeding before Judge Brewer in an attempt to challenge his credibility by establishing he had falsely stated in the divorce proceeding that he was unable to locate Tamela to serve her with notice of his petition for dissolution of marriage.

"Q. Do you remember Judge Brewer saying to you, 'Can you tell me how you tried to let her know about this divorce?' Do you remember her asking you that?

A. I never appeared in that court. A lawyer appeared in that court.

* * *

Q. Is it your testimony that you did not appear in front of Judge Eileen Mary Brewer on March 10, 2004, to prove up your divorce against Tam[e]la? Is that your testimony?

A. A lawyer went in there. He did the case. I did not stand in front of the Judge, as best I can recall.

* * *

Q. You could get in some trouble with the police department for obtaining a divorce through perjured testimony, would you not agree?

A. I did not perjure–I did not stand in front of the Judge."

¶ 8    On October 4, 2005, the Department sought to discharge Taylor for committing bigamy ("Taylor I"), alleging he was married to both Tamela and Bridgette from December 2002 until his divorce from Tamela was finalized in March 2004. After a hearing, the Board found Taylor not guilty of bigamy because he "reasonably believed that he was legally eligible to marry [Bridgette]."

¶ 9    In September 2007, the Department brought another disciplinary action seeking to discharge Taylor ("Taylor II"), alleging that he violated Rules 1 and 2 of the Department's Rules and Regulations. Rule 1 prohibits "[v]iolation of any law or ordinance," and Rule 2 prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department." Chicago Police Department Rules and Regulations, art. V, Rs. 1, 2 (2011). The Department alleged Taylor violated Rule 1 by giving perjured testimony in the criminal proceeding when he stated he never appeared or testified before Judge Brewer in his divorce prove-up. The Department also alleged Taylor committed three violations of Rule 2: (1) making the false statement during the criminal proceeding; (2) falsely stating on his marriage license application with Bridgette that this would be his first marriage; and (3) falsely certifying in the petition for dissolution of marriage regarding Tamela that he did not know her whereabouts.

¶ 10   Taylor moved to dismiss the charges against him on *res judicata* and collateral estoppel grounds. He contended the charges could have been brought against him in Taylor I. A hearing officer rejected Taylor's contentions. "The fact that both sets of charges arise from Officer Taylor's earlier marriages does not mean the two sets of allegations arise from the same set of operative facts. *** I cannot agree that the two sets of charges arise from the same set of operative facts." The four violations proceeded to a hearing before the Board.

¶ 11   The Board held an evidentiary hearing on February 20, 2008, and March 11, 2008, at which Taylor, Tamela, Robbie, and Bridgette testified. In a decision dated June 19, 2008, the Board rejected Taylor's collateral estoppel argument, concluding "the issues in Taylor II *** are totally different than the issue in Taylor I." As to his *res judicata* claim, the Board held that "[Taylor's] perjury before Judge Coco did not arise from the same core of operative facts which led to the charge that Respondent was married to two women at the same time." It ruled similarly regarding the allegation that Taylor falsely stated that he did not know the whereabouts of Tamela when he filed for divorce. The Board agreed with Taylor, however, that the allegation that he falsely stated on the marriage application that he had never before been married was barred by *res judicata*. It found this allegation arose out of the same core of operative facts that gave rise to Taylor I and accordingly dismissed this charge.

¶ 12   After ruling on Taylor's motion to dismiss, the Board summarily concluded that Taylor was guilty of violating Rule 1 by committing perjury and guilty of violating Rule 2 by (1) falsely stating before Judge Coco that he had not appeared before Judge Brewer, and (2) falsely certifying in the divorce proceeding that he did not know Tamela's location or whereabouts. The Board did not explain its ruling that Taylor committed perjury during the

criminal proceeding.

¶ 13    On December 1, 2009, Taylor filed a petition for administrative review before the circuit court of Cook County. In a written decision dated March 24, 2010, the court affirmed all of the Board's findings. The court rejected Taylor's argument that the Board failed to prove each element of perjury to establish a violation under Rule 1. The court concluded that whether the elements of perjury were established presented questions of fact, citing *People v. LeCour*, 172 Ill. App. 3d 878, 885 (1988), and *United States v. Gaudin*, 515 U.S. 506 (1995). The court noted that such findings are entitled to "extreme deference" and are not subject to reversal unless "clearly erroneous." As to the materiality element of perjury, the court explained:

> "Whether or not Taylor had implemented divorce proceedings against Tamela at the same time he was married to Bridgette would tend to prove or disprove whether Bridgette's threats carried any weight as to Taylor. The Board thus found Taylor's testimony before Judge Coco to be relevant and material to those proceedings. Given the deferential nature of this review, this Court does not find the Board's conclusion to be against the manifest weight of the evidence."

¶ 14    The court also held the Board properly found the false statement before Judge Coco and the false statement about Tamela's whereabouts in the divorce proceeding constituted violations of Rule 2. The court ruled the punishment of discharge based on the violations of Rules 1 and 2 was neither arbitrary nor unreasonable. "It is imperative to the Department to have police officers who are reliable witnesses and cannot be impeached at trial." The court denied Taylor's petition for administrative review. This timely appeal followed.

¶ 15                                        ANALYSIS

¶ 16    Taylor insists that *res judicata* barred the Department's second disciplinary action because the Department could have brought these claims in Taylor I. He contends the Board's rulings that he violated Rule 1 by committing perjury and Rule 2 by making false statements were contrary to the manifest weight of the evidence. The Board responds that *res judicata* does not apply because "the bigamy charges and the false-statement charges did not arise from a single group of operative facts" and its decision that Taylor violated Rules 1 and 2 was consistent with the manifest weight of the evidence.

¶ 17    "As the reviewing court, we review the decision of the Board, not that of the trial court." *Daniels v. Police Board*, 338 Ill. App. 3d 851, 858 (2003). We review the Board's decisions on questions of fact against the manifest weight of the evidence standard, while we review its decisions on questions of law *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Mixed questions of fact and law are reviewed for clear error. *Id.*

¶ 18                                      *Res Judicata*

¶ 19    We agree with the parties that whether *res judicata* applies in the instant case presents a question of law. *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004). It was Taylor's burden to

demonstrate that *res judicata* applied. "The party seeking to invoke the doctrine of *res judicata* bears the burden of proving that it applies." *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1161 (2005). The hearing officer, the Board, and the circuit court rejected Taylor's claim that he met this burden.

¶ 20 In his main brief, Taylor stresses that *res judicata* applies not only to matters actually decided, but also to issues that "*could have been raised in the first proceeding*." (Emphasis in original.) See *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 717 (2002). Taylor acknowledges the same test applies to issues that *were* decided and to those that *could* have been decided. "For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The parties agree that the first and third elements were satisfied, as *res judicata* may be properly invoked based on administrative proceedings such as Taylor I, which rendered a decision on the merits and involved the same parties. *Bagnola*, 333 Ill. App. 3d at 717-18. The parties vigorously dispute the second element, that the causes of action in Taylor I and Taylor II are identical.

¶ 21 Illinois applies the "transactional" test to determine whether identity of cause of action exists. *River Park*, 184 Ill. 2d at 310-12. "The 'transactional' test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." (Internal quotation marks omitted.) *Id.* at 307. The transactional test is "the more liberal *** test for determining whether claims are part of the same transaction." *Id.* at 310. In *River Park*, the court set forth the focus of the analysis to determine whether *res judicata* bars the second litigation. " '[T]o determine whether there is an identity of causes of action between the first and second suits, we must look to the facts that give rise to plaintiffs' right to relief, not simply to the facts which support the judgment in the first action ***.' " *Id.* at 309-10 (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 338-39 (1996)).

¶ 22 Taylor argues there is an identity of the causes of action in Taylor I and Taylor II because "petitioner's allegedly false statement in [the] January 2004 petition for dissolution of marriage came in an effort to remedy the predicament[,] which was the subject of the Department's 2005 allegations, *i.e.* petitioner's being legally married to two women simultaneously." He contends, "[T]he Department's allegation concerning petitioner's August 2004 testimony at Bridgette's trial involved petitioner's allegedly false statements about the divorce proceedings petitioner initiated to remedy that same predicament."

¶ 23 That there is some tenuous factual connection between the two causes of action, however, does not establish a single group of operative facts. The operative fact in Taylor I was that Taylor had two wives, whereas the operative facts in Taylor II are that Taylor lied while divorcing the first wife and lied again while pressing criminal charges against the second. The operative fact in Taylor I ceased to exist as of the March 2004 divorce between Taylor and his first wife. The violations in Taylor II grounded on his false testimony at the criminal harassment trial involving his second wife did not arise until September 2004. The "transaction" of being simultaneously married to two women is not the same as the

"transaction" of divorcing the first wife and of pressing criminal charges against the second. We agree with the Board that the transactions differ in "time, space, origin, [and] motivation." The operative facts of Taylor I and Taylor II do not " 'form a convenient trial unit.' " *River Park*, 184 Ill. 2d at 312 (quoting Restatement (Second) of Judgments § 24 (1982)); see also *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 312 Ill. App. 3d 1098, 1106 (2000) (*res judicata* did not bar action where the transactions "took place during completely different time periods and could not have arisen out of the same factual matters").

¶ 24    We conclude the instant administrative action was not barred by the administrative action that concluded in 2005. *Res judicata* was never triggered.


¶ 25                         Department Rules Violations

¶ 26    Even if this second administrative proceeding is not barred by *res judicata*, Taylor contends the perjury charge fails on its merits because the Department failed to show his statement at Bridgette's criminal hearing was knowingly false or, even if false, was material to that hearing so as to constitute perjury. It is the Department's burden to establish that Taylor committed perjury. *Wagner v. Kramer*, 125 Ill. App. 3d 12, 17 (1984) ("the department has the duty to go into a hearing and prove its case" (internal quotation marks omitted)).

¶ 27    Taylor correctly acknowledges that we review the Board's finding that he made a knowingly false statement against the manifest weight of the evidence as a question of fact. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). ("[A] reviewing court is limited to ascertaining whether [the administrative agency's] findings of fact are against the manifest weight of the evidence.").

¶ 28    The Board's conclusion that Taylor knowingly made a false statement was fully consistent with the manifest weight of the evidence. Taylor averred three times that he did not appear in the divorce proceeding involving Tamela, when in fact he had. On the record before us, there is no question Taylor's testimony was false. Even if we credit Taylor's argument that one of the three assertions was not completely false because he qualified his statement as one given "as best I can recall," the other two statements were patently false. See *People v. Columbo*, 118 Ill. App. 3d 882, 968 n.21 (1983) (where the court noted that the witness "qualified her testimony *** by stating, 'As far as I can remember' and 'Not that I recall' " in questioning whether intentional misrepresentation occurred).

¶ 29    Also, Taylor testified before the Board, which placed the Board in the best position to assess his claim that he did not know the statements he gave were false. See *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339, 349 (2002) ("The administrative agency has the responsibility of weighing evidence, determining credibility and resolving any conflicts in the evidence."); *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427-28 (1992) ("It is not *** the court's duty to weigh the evidence and then determine where the preponderance of the evidence lies.").

¶ 30    Consistent with the manifest weight of the evidence, we conclude that Taylor, while testifying in the criminal proceeding, falsely claimed that he did not testify before Judge

Brewer. We infer he did so to avoid being confronted with his dubious proclamation at his divorce prove-up that he did not know Tamela's location or whereabouts to justify service by publication.

¶ 31 However, uttering a false statement under oath does not establish perjury. "A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." 720 ILCS 5/32-2(a) (West 2010). The dispute between the parties on whether perjury was proved centers on the element of materiality. At oral argument, the parties agreed that the issue of materiality turns on whether Taylor's assertion that he did not appear in the divorce proceeding against Tamela was material to any issue or point in the criminal proceeding involving Bridgette. *Cf.* 720 ILCS 5/32-2(d) (West 2010) (the exemption for a peace officer's use of a false or fictitious name "shall not apply to testimony in judicial proceedings where the identity of the peace officer is *material to the issue*" (emphasis added)).

¶ 32 The respective position of the parties is premised on the issue of materiality constituting a question of fact for the Board to resolve, subject to review against the manifest weight of the evidence standard. We do not agree with the premise of the parties.

¶ 33 At best, the issue of whether Taylor committed perjury involved a mixed question of law and fact. See *United States v. Gaudin*, 515 U.S. 506, 512 (1995) (the materiality element of perjury "requires applying the legal standard of materiality *** to *** historical facts").[1] "[A]n examination of the legal effect of a given state of facts involves a mixed question of fact and law with a standard of review of 'clearly erroneous.' " *Cinkus*, 228 Ill. 2d at 211 (quoting *City of Belvidere*, 181 Ill. 2d at 205). "[A]n administrative agency's decision is deemed 'clearly erroneous' when the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211.

¶ 34 Before we can review the Board's application of the law to the historical facts regarding the false statements made by Taylor in the criminal proceedings involving Bridgette, we determine in the first instance whether the "legal standard of materiality" (*Gaudin*, 515 U.S. at 512) has been met.

¶ 35 "Materiality is derived from the relationship between the proposition of the allegedly false statement and the issues in the case. [Citation.] The test of materiality for an allegedly perjured statement is whether the statement tends to prove or disprove an issue in the case." *People v. Acevedo*, 275 Ill. App. 3d 420, 423 (1995). This determination "involves the relationship between an allegedly false statement and the nature of the proceedings at which it is made." *People v. Rutledge*, 257 Ill. App. 3d 769, 771 (1994). "In order to constitute perjury the testimony involved must be shown 'by clear, convincing and satisfactory

---

[1]We note the Board does not cite in its brief *People v. LeCour*, 172 Ill. App. 3d 878 (1988), the case the circuit court cited for its "extreme deference" to the Board's perjury finding. The absence of a cite is for good reason: *LeCour* stands for nothing more than the proposition that "[t]he existence of a *** mental state is a question of fact," which is not an issue before us. *Id.* at 885.

evidence to have been *** material to the issue tried and not merely cumulative but probably to have controlled the result.' " *People v. Glanton*, 33 Ill. App. 3d 124, 146 (1975) (quoting *People v. Lewis*, 22 Ill. 2d 68, 71 (1961)).

¶ 36    A close examination of the facts in *Acevedo* reveals the required connection between the false statement and the "issue or point in question" in the proceeding in which the false statement was made. A witness in a first degree murder case was charged with perjury after the first degree murder defendant was acquitted based on an alibi defense. *Acevedo*, 275 Ill. App. 3d at 421-23. The *Acevedo* court rejected the perjury defendant's claim that "his alleged[ly] [false] statements could not have been material to the State's attempt to discredit [the murder defendant's] alibi defense." *Id.* at 423. The perjury defendant was found guilty based on his false testimony that he denied telling an investigating officer that the murder defendant and others had stopped by the perjury defendant's home " 'dressed in black with paint on their faces' " 5 to 10 minutes after he heard shots and the shooting murder had occurred. *Id.* at 422. The *Acevedo* court affirmed the conviction based on the perjury defendant's testimony that he denied telling the investigating officer that the murder defendant was "within a few blocks of the murder minutes after it occurred," which the court determined was material to issues in the murder case. *Id.* at 423.

¶ 37    Based on its reading of *Acevedo*, the Board contends it stands for the broad proposition that materiality was established in the instant case because "a conviction of Bridgette would turn almost entirely, if not entirely, on [Taylor's] testimony." We reject such a facile analysis of materiality. In a case that pits a complaining witness against the defendant, it may be said that anything that comes out of the complaining witness's mouth will decide whether the accused will be convicted or not. That, however, does not make everything that is spoken by the complaining witness at trial *material* to the complaining witness's charge against the defendant. Before a false statement under oath can constitute perjury, the false statement must be "material to the issue or point in question" in that proceeding. 720 ILCS 5/32-2(a) (West 2010). Other than its claim that Taylor's false statement " 'could have influenced' the trier of fact," the Board fails to identify the "issue or point in question" that made the false statement material in the criminal harassment proceeding.

¶ 38    That Taylor appeared in the earlier divorce proceeding, contrary to his testimony at the criminal proceeding, had no bearing on whether Bridgette was guilty of criminal harassment. See *Rutledge*, 257 Ill. App. 3d at 771 (finding of guilty of perjury was reversed where the question of whether the defendant was "lying or telling the truth about his possession of cocaine was immaterial" at the suppression hearing); *Cf. People v. Columbo*, 118 Ill. App. 3d 882, 967 (1983) (false testimony elicited during cross-examination that witness did not engage in specific deviate sex acts was not subject to further cross-examination for impeachment purposes where "deviate behavior *** was unrelated to the material issue of homicide").

¶ 39    Nor did the Board explain its rulings. The only explanation regarding Taylor's alleged commission of perjury is the one offered by the circuit court, which the Board appears to have adopted before us. The court stated: "Whether or not Taylor had implemented divorce proceedings against Tamela at the same time he was married to Bridgette would tend to prove or disprove whether Bridgette's threats carried any weight to Taylor." However, that

Taylor had commenced divorce proceedings was never a point of contention in the criminal proceeding. Taylor fully admitted divorce proceedings had been commenced in his testimony before Judge Coco. It is an indisputable fact that Taylor divorced his first wife in March 2004 and the criminal harassment trial did not take place until August 2004.

¶ 40　　　Nor is Taylor's statement about whether divorce proceedings had been commenced a subject of the inquiry before the Board in the instant proceeding. That a finder of fact could view that Taylor had implemented divorce proceedings against Tamela as somehow tending "to prove or disprove whether Bridgette's threats carried any weight to Taylor" is no substitute for a legal showing of materiality that Taylor's false statement influenced the outcome of the criminal harassment trial as the circuit court seemed to infer from the Board's finding of perjury. See *Rutledge*, 257 Ill. App. 3d at 771 (the court reversed finding of guilty of perjury where the truth or falsity of the defendant's statement that he did not possess cocaine "was immaterial" at the suppression hearing).

¶ 41　　　Nevertheless, the Board argues that the testimony was material because "[t]estimony about whether he had testified truthfully in another court bore on his credibility." The case upon which the Board relies, *People v. Olinger*, 176 Ill. 2d 326 (1997), is inapposite to the proposition for which it is cited. The Board correctly points out that the *Olinger* court observed, "[T]he 'jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence ***.' " *Id.* at 345 (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). That is hardly a momentous statement. Nor do we find in that statement any support that materiality was demonstrated in this case. It is well established that credibility of a witness may turn on nothing more than the demeanor of the witness, which is hardly a substitute for a showing of the materiality of an admittedly false statement on the issue or point in question in the underlying proceeding to establish perjury as compelled by statute. 720 ILCS 5/32-2(a) (West 2010).

¶ 42　　　Also, the context of the *Olinger* case places it outside of the context of this case. Unlike in this case, the defendant in *Olinger* was not an alleged perjurer. The *Olinger* defendant was a postconviction petitioner seeking an evidentiary hearing grounded on the State's alleged "knowing use of perjured testimony [by another individual] to obtain a criminal conviction." *Id*. Under the circumstances where the State is accused of using false evidence, "the [United States Supreme] Court has imposed a 'strict standard of materiality.' " *People v. Coleman*, 183 Ill. 2d 366, 392 (1998) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). That standard applies because it was "the most lenient to the defendant." *Id.* No such standard applies here to support the Board's finding.

¶ 43　　　In the instant case, the Department bore the burden of proving perjury. *Wagner*, 125 Ill. App. 3d at 17. The defendant in *Olinger*, who was at the second stage of a postconviction proceeding, had the burden to make a substantial showing that his constitutional rights were violated. Such a showing would entitle him to an evidentiary hearing, at which he would have to prove by a preponderance of the evidence that perjury actually occurred and the State suborned the perjury. *Olinger*, 176 Ill. 2d at 342. The holding in *Olinger* favored the criminal defendant's *protection*, not his conviction. *Id.* at 352 (granting the defendant an evidentiary hearing to determine whether his due process rights had been violated). *Olinger* provides no support to the Board in the instant case.

¶ 44    The Board cites no case law, nor have we found any, to support the proposition that a defendant may be convicted of perjury for making a false statement that is substantively irrelevant in the proceeding in which the statement is made based solely on a claim that the false statement places the defendant's credibility at issue. In our judgment, a false statement that bears solely upon a defendant's credibility is no showing at all of the statement's materiality in the proceeding in which it was uttered. By the Board's logic, any untrue statement by a criminal defendant made under oath at trial would open that defendant to a charge of perjury simply because a claim by the defendant, if proved to be untrue, is damaging to the defendant's credibility. Such logic would expand the definition of materiality in the context of proving perjury to the point of being meaningless. See *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010) (statute should be construed so that no term is rendered "meaningless or superfluous").

¶ 45    We find support in our position in the opinion in *Rutledge*, where the Third District addressed whether a defendant was properly found guilty of perjury for allegedly lying at a suppression hearing about possessing cocaine that the police claimed to have found in his pocket. *Rutledge*, 257 Ill. App. 3d at 771. The court found his statement concerning his possession of cocaine immaterial to the suppression hearing because the issue or point in question at the hearing was whether the police search was illegal. *Id.* at 770. The court rejected the circuit court's ruling that the "statement was material since it bore upon his credibility" as sufficient to uphold a perjury conviction. *Id.* at 769. "The issue at the suppression hearing was whether the police violated the defendant's fourth amendment rights by subjecting him to an illegal search. Therefore, whether Rutledge was lying or telling the truth about his possession of cocaine was immaterial at that hearing." *Id.* at 771. Thus, that a sworn statement may bear upon the speaker's credibility does not *ipso facto* render the statement "material to the issue or point in question" in the underlying proceeding to establish perjury. See *Columbo*, 118 Ill. App. 3d at 968 (the derivative issue of perjury was not proved where the false statements were not material to the issue in question and where no showing was made that the facts were "intentionally misrepresented").

¶ 46    Consistent with the holding in *Rutledge*, we are unpersuaded that Taylor's statement that he did not appear at his divorce prove-up was material simply because, as the circuit court inferred, it had some bearing on Taylor's credibility during the criminal proceeding. The Board has not demonstrated that Taylor's admittedly false statement " 'probably *** controlled the result' " of the criminal proceeding against Bridgette. *Glanton*, 33 Ill. App. 3d at 146 (quoting *Lewis*, 22 Ill. 2d at 71).

¶ 47    We conclude that Taylor's denial that he was present at his divorce prove-up was not material to any issue or point in question in the underlying criminal harassment proceeding. As such, we conclude the issue of the sufficiency of the showing of the facts of this case presents a question of law based on the Board's claim is that materiality is demonstrated when the false statements can be said to have impacted the witness's credibility. *Rutledge*, 257 Ill. App. 3d at 771. We review questions of law *de novo*. *City of Belvidere*, 181 Ill. 2d at 205.

¶ 48    Under *de novo* review, we reverse the Board's determination that Taylor's false statement at the criminal proceeding constituted perjury. Even if the Board's determination is subject

-11-

to the clearly erroneous standard of review based on the application of law to the historical facts, we find the Board's ruling that Taylor committed perjury, which it issued without disclosing its reasoning, was clearly erroneous. Taylor did not commit perjury because the alleged perjurious statements were immaterial to the outcome of the criminal harassment proceeding.

¶ 49    Taylor contends the Board also erred in holding he violated Rule 2, which prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department." Chicago Police Department Rules and Regulations, art. V, R. 2 (2011); see *Rodriguez v. Weis*, 408 Ill. App. 3d 663, 664 (2011). He argues the record contains no evidence he lied about the divorce proceeding or about his knowledge of Tamela's address when certifying his divorce petition. As to his statements regarding the divorce proceeding, we reviewed the Board's conclusion that Taylor lied at Bridgette's trial when he falsely claimed that he did not testify before Judge Brewer at the beginning of this section and upheld it. Also, Taylor admitted at the hearing before the Board that he was "aware that Tamela Taylor lived in Sikesson [*sic*], Missouri," and he spoke with her and his son while they lived in that same town. Tamela testified that Taylor called her at the telephone number of the home in which she was living at the time; the couple's son Robbie testified Taylor called him at the same home.

¶ 50    There is no basis to overturn the Board's finding that Taylor was untruthful when he certified in the divorce petition that Taylor's "whereabouts are unknown to [him]." There is no doubt that Taylor knew Tamela's whereabouts and could have readily discovered Tamela's address had he desired to do so. As such, we agree with the Board's finding that Taylor lied when he affirmed to Judge Brewer that he "just could not find out where [Tamela] live[d]." The Board's finding that Taylor lied about his actual knowledge of Tamela's address or whereabouts is consistent with the manifest weight of the evidence.

¶ 51    We find the Board did not err in holding these lies constituted violations of Rule 2. "Trustworthiness, reliability, good judgment, and integrity are all material qualifications for any job, particularly one as a police officer." *Village of Oak Lawn v. Illinois Human Rights Comm'n*, 133 Ill. App. 3d 221, 224 (1985) ("lying from the beginning disqualified [the police department applicant] from consideration for the position and made her an unfit employee for the Oak Lawn Police Department").

> "A police officer's credibility is inevitably an issue in the prosecution of crimes and in the Chicago police department's defense of civil lawsuits. A public finding that an officer had lied on previous occasions is detrimental to the officer's credibility as a witness and as such may be a serious liability to the department." *Rodriguez*, 408 Ill. App. 3d at 671.

The *Rodriguez* court upheld the Police Board's discharge of plaintiff police officer for violating Rule 2 where the officer "exhibited a lack of honesty by altering her return-to-work status reports *** and then again by giving testimony under oath that the Board rightly found incredible." *Id.*

¶ 52    Though we affirm the violations of Rule 2, we deem it appropriate to remand this matter to the Board to reevaluate the punishment imposed upon Taylor. See *Basketfield v. Police*

*Board*, 56 Ill. 2d 351 (1974) (*per curiam*). In *Basketfield*, our supreme court dismissed charges that a police officer had committed unlawful acts, but sustained charges he violated police regulations. *Id.* at 360-61. The court remanded the matter: "The most serious charges cannot be sustained, and in fundamental fairness we believe that the sanction imposed in this instance might well differ were only the charges that have been sustained the basis for disciplinary action." *Id.* at 361. We follow *Basketfield*.

¶ 53       While we reverse the Board's finding that Taylor committed perjury, we sustain the charges that Taylor violated Department regulations. The lesser charges being sustained, we direct the Board to reconsider its punishment of Taylor, without expressing any opinion as to whether the proved violations of Rule 2 justify dismissal. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 99 (1992) (reviewing courts defer "to the administrative agency's expertise and experience in determining what sanction is appropriate").

¶ 54                                    CONCLUSION

¶ 55       *Res judicata* did not bar this action because the Department's disciplinary action against Taylor in an earlier administrative proceeding for bigamy arose out of a different group of operative facts. The Rule 1 violation based on the allegation that Taylor committed perjury cannot be sustained because Taylor's denial that he testified in the divorce proceeding involving his first wife was not material to the issues in the criminal harassment proceeding against his second wife in which he issued his denial. We affirm the Board's conclusion that Taylor's false statements in the two different court proceedings violated Rule 2. We remand this matter to the Board to determine whether a lesser punishment based solely on the Rule 2 violations is warranted.

¶ 56       Affirmed in part and reversed in part; cause remanded.